**BAUER LAMP CO., INC.,**
Plaintiff–Appellee,

v.

**Martin SHAFFER, Howard Levi, Shaffer & Levi, Inc., a Florida Corp.,**
Defendants–Appellants.

No. 89–6209.

United States Court of Appeals,
Eleventh Circuit.

Sept. 12, 1991.

Harvie S. Duval, Louis C. Arslanian, Greenfield & Duval, North Miami, Fla., for defendants-appellants.

Edward M. Joffe, Sandler, Travis & Rosenberg, P.A., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Martin Shaffer, Howard Levi and Shaffer & Levi, Inc. appeal from the judgment of the United States District Court for the Southern District of Florida based on a jury verdict finding them jointly and severally liable for damages arising out of two counts of trade dress infringement and one count of tortious interference of business relations. The focus of the appeal is the denial by the district court of their motions for a directed verdict or a judgment notwithstanding the verdicts on these three counts. Finding no error, we affirm.

On August 7, 1986, Bauer Lamp Co., Inc. (Bauer) filed a complaint against Shaffer, Levi and their company Shaffer and Levi, Inc.[1] and also against two other companies, Sunset Lamp Corp. d/b/a Richards Manufacturing Company and Visual Effects, Inc., which eventually settled before trial and are not parties to this appeal. Counts I and II sought injunctive relief and damages for trade dress infringement pursuant to the provisions of 15 U.S.C. § 1125(a) (hereinafter § 43(a) of the Lanham Act).[2]

---

**1.** Martin Shaffer, Howard Levi, and Shaffer & Levi, Inc. were sued as joint tort-feasors. Unless there is some reason to differentiate between the individuals and the company, the appellants will be referred to as Shaffer and Levi or as the defendants.

**2.** 15 U.S.C. § 1125(a) provides:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the

These two counts were based on defendants efforts to retain Richards Manufacturing Company and Visual Effects, Inc., to manufacture lamps that were identical to Bauer's neo-classic line of lamps. Count III sought damages for slander. Count IV claimed dilution of trademark under Fla. Stat.Ann. section 495.151[3] and sections 501.201–501.213[4] (West 1982). In Count V, Bauer charged tortious interference with business relationships and Count VI alleged misappropriation of trade secrets.[5]

Trial commenced on June 27, 1988. At the close of the evidence, the district court directed a verdict in favor of the defendants on Counts IV and VI. On July 6, 1988, the jury returned a verdict in favor of plaintiffs on Counts I, II, III, and V. The jury was provided with a verdict form for each count containing interrogatories to enable the jurors to precisely apportion liability and damages. The jury found the defendants jointly and severely liable on Count I for trade dress infringement, growing out of the defendants' involvement with Richards Manufacturing Company, and awarded damages in the amount of $16,000.00. As a result of defendants' association with Visual Effects, Inc., the jury found the defendants jointly and severely liable on Count II and assessed damages at $16,900.00. On Count III, the slander count against the individual defendants, the jury returned a verdict against Shaffer only, imposed no actual damages and $1.00 in punitive damages. On Count V, the claim for tortious interference with business relationships, the jury found the defendants jointly and severely liable but found no compensatory damages. However it did award $60,000.00 in punitive damages against each of the three defendants for a total of $180,000.00.

On July 12, 1988, the court entered its final judgment based on the jury verdicts. On July 22, 1988, the defendants filed motions for judgment notwithstanding the verdict. Over a year later, on October 27, 1989, the district court denied both of these motions. Notice of appeal was filed on November 17, 1989.

The suit arose out of a disagreement between Bauer Lamp Company, Inc., and Shaffer and Levi, who through their company, Shaffer and Levi, Inc., served as Bauer's exclusive sales representative in Florida. After a seven-year business relationship, Bauer terminated this association in 1984 because Bauer believed that Shaffer and Levi had falsified orders and financial records involving their business transactions. At the same time Bauer also learned that Shaffer and Levi were representing other home furnishing companies

---

falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
*Id.*

3. Fla.Stat.Ann. § 495.151 (West 1982) provides: Every person, association, or union of workingmen adopting and using a mark, trade name, label or form of advertisement may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark, trade name, label or form of advertisement if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name, label or form

of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.
*Id.*

4. Fla.Stat.Ann. §§ 501.201–501.213 (West 1982) are the provisions in the Florida code dealing with unfair trade practices.

5. The complaint as filed contained six counts and were numbered in the same sequence as delineated in this opinion. When the court directed verdicts on Counts IV and VI, alleging violations of the state Unfair Trade Practices Act and misappropriation of trade secrets, respectively, it mistakenly referred to Count V, the tortious interferences count, as Count IV. This erroneous designation of the counts continued throughout the remainder of the court orders and the briefs filed by the parties in this court. In an effort to clear up this ambiguity, we will refer to the counts as they were numbered in the complaint.

and, as a result, were unable to adequately service its account.

The termination of the relationship was not amicable and consequently caused hard feelings between the parties. Shaffer told Eric Bauer, the president of Bauer Lamp Company, Inc., that he felt that he and his partner had received a "royal screwing" and that he was going to even the score. R7–38. To accomplish this purpose, Shaffer planned to copy Bauer's lamps and sell them at a lower price in an effort to put the company out of business.

At the Dallas Home Furnishing Show in July, 1984, words were exchanged between Eric Bauer and Shaffer and Levi, sometimes in front of prospective clients, which gave rise to the slander count. Shaffer repeated his scheme to drive Bauer out of business to numerous clients. He specifically revealed his strategy to manufacture replicas of Bauer's new line of neo-classic lamps and sell them at a lower price.

In August, 1984, Shaffer and Levi once again encountered Eric Bauer at a home furnishing show in Miami. Shaffer and Levi had rented space along with two other companies, Visual Effects, Inc. and Richards Manufacturing Company, to solicit orders for their lamps. The floor models were actually lamps manufactured by Bauer Lamp Company. Again, the defendants made derogatory remarks about the plaintiff. Eric Bauer did not become aware that the defendants were producing the infringing lamps until July 1, 1986, when a customer showed him the sales literature used by Shaffer and Levi to promote the lamps manufactured by Visual Effects, Inc. and Richards Manufacturing Company. The lamps in the promotional literature looked exactly like the Bauer lamps. After the filing of this lawsuit, both Richards Manufacturing Company and Visual Effects, Inc. consented to a permanent injunction to cease the manufacture and sale of the infringing lamps.

Shaffer, Levi and Shaffer & Levi, Inc., essentially allege three grounds of error. In the first two, Shaffer and Levi urge that the district court erred in denying their motions for a directed verdict or a judg-

ment notwithstanding the verdict on the trade dress counts. As to Count V, the count alleging tortious interference with business relationships, the defendants take the position that the jury's verdict contradicted the applicable law because it awarded punitive damages without first finding any compensatory damages. Shaffer does not appeal the jury verdict finding him liable for slander.

In their appeal from the denial of their motions for a judgment not withstanding the verdict on Counts I and II, the trade dress infringement counts, the defendants argue that (1) Bauer failed to prove that its lamps had developed a secondary meaning to the general consumer; (2) the district court erred by instructing the jury that trade dress infringement could be redressed under § 43(a) of the Lanham Act; (3) even if Bauer could prove that its lamps were distinctive, thus, negating the requirement to prove secondary meaning, the court erroneously denied them the right to introduce evidence that the Copyright Office had refused to register Bauer's lamps as a copyrighted design; (4) the court erred in allowing the plaintiff to proceed on a theory of contributory infringement since the other infringers had consented to an injunction; (5) the finding by the jury of the likelihood of confusion was not supported by the evidence; and (6) the evidence neither supports the verdicts nor the award of damages on Counts I and II. Their challenge to the award of punitive damages on the tortious interference claim (Count V) is premised on their contention that punitive damages are not recoverable under Florida law because there was no award of compensatory damages.

The standard of review for granting a motion for a directed verdict or a judgment notwithstanding the verdict is the same as that of the district court. When considering such a motion, the court must view the evidence in the light most favorable to the mon-moving party. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir.1988). After viewing the evidence as such, the motion should be denied where there exist substantial evi-

dence over which reasonable persons could differ. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). The application of the law to the facts by the judge or jury is reviewed *de novo*. *United States v. Forker*, 928 F.2d 365 (11th Cir.1991). Allegations of error in ruling on an evidentiary matter is subject to an abuse of discretion standard. *Jones v. Automobile Ins. Co. of Hartford Conn.*, 917 F.2d 1528, 1537 (11th Cir.1990).

This court has recognized a cause of action under § 43(a) of the Lanham Act for trade dress infringement. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821 (11th Cir.1982). "Trade dress" is defined as "the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir.1986). Also, the principle inquiry in infringement cases is the likelihood of confusion between the alleged infringer's product or mark and that of the plaintiff's. J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 23:1 (2d ed. 1984).

In order to establish trade dress infringement, three elements must be proved. First, the plaintiff must show that the product is distinctive or has developed a secondary meaning; second, that the features in question are nonfunctional and third, that the resemblance between the two products is confusingly similar. *AmBrit*, 812 F.2d at 1535. Since each element is fact sensitive, we cannot reverse the jury verdict "absent clear error." *Id.*

In *AmBrit* the product at issue was the wrapper, with a distinctive design, for the Klondike ice cream bar. The district court found that since the introduction of the bar in 1980, the wrapper was inherently distinctive. *Id.* at 1536. In order to acquire the quality of distinctness, its appearance must "allow consumers to identify the product from the trade dress." *Id.* If the trade dress is not distinctive then the plaintiff must prove alternatively that it "has acquired secondary meaning." *Id.* at 1535. Secondary meaning "is the connection in

the consumer's mind between the mark and the product's producer, whether that producer is known or unknown." *Id.* at 1536, n. 14.

Bauer maintains that under *AmBrit* the lamps satisfied both the secondary meaning and distinctiveness tests. There is sufficient evidence to support either assertion. There was testimony that Bauer's lamps were unique in the marketplace. The jury could have inferred from the testimony that during the Miami furnishing show in August, 1984, there were no similar lamps shown except the two Bauer lamps displayed by Shaffer and Levi. Meyers, the designer of the lamps, testified that he recognized the lamps that Shaffer and Levi had on display as those manufactured by Bauer. Finally, the jury had the opportunity to compare the lamps in the courtroom.

The verdict forms submitted to the jury do not differentiate between distinctiveness and secondary meaning. Consequently, Bauer points out there is even stronger record evidence that the lamps had developed a secondary meaning. Assuming that the relevant consumers were the wholesalers and buyers for the retail stores, many of these persons engaged in the lamp trade testified that they knew the lamps were produced by Bauer. Therefore, the evidence was more than adequate for submission of this issue to the jury and to survive a motion for directed verdict.

With respect to whether the lamps had developed a secondary meaning Shaffer and Levi also argue that the relevant consumer is the buying public and not the wholesalers and buyers who attended the furniture show where the lamps were on display. However, since we have found there was sufficient evidence for the jury to find that the lamps were distinctive, there is no need to address this alternative issue. *Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc.*, 706 F.Supp. 855, 858 (S.D.Fla.1989) (to prove secondary meaning it is not necessary that the relevant consumer group be the retail purchaser).

Shaffer and Levi contend that the district erred in instructing the jury that an action for trade dress infringement can be brought pursuant to § 43(a) without the necessity of proving secondary meaning along with distinctiveness. This question is answered in the *AmBrit* case. The court allowed an action for trade dress infringement under § 43(a) and also ruled that the plaintiff had to prove distinctiveness *or* secondary meaning. In fact, it is clear from the present record that the district court instructed the jury on the necessity of finding that Bauer's lamps were distinctive or had established a secondary meaning. R4 Tab 155, R17–167–69. As we have already stated, there was more than enough evidence presented to support a jury verdict that plaintiff proved the product was distinctive or had developed secondary meaning.

Next, defendants complain that the district court erred in refusing to permit the introduction of evidence that Bauer attempted and failed to have the lamp design registered under the Copyright Act.[6] In order to sustain a suit for copyright infringement, the item must be registered in accordance with the act. Under the Lanham Act such registration is not necessary, though it does facilitate the proof of certain elements of infringement. Trademark protection accrues with use, while copyright protection begins with registration. *See* R. Wincor & I. Mandell, COPYRIGHT, PATENTS AND TRADEMARKS 73–4 (1980). Thus, from a purely relevance standpoint, the admission of such evidence would have had no probative value. We discern no abuse of discretion in the district court's refusal to admit this evidence. *Jones v. Automobile Ins. Co. of Hartford Conn.*, 917 F.2d 1528, 1537 (11th Cir.1990).

The defendants also fault Bauer's theory of contributory infringement. They base this assignment of error on the fact that Shaffer and Levi did not manufacture the alleged infringing lamps. It is undisputed that they contacted two manufacturers, Richards Manufacturing Company and Visual Effects, Inc., and asked them to produce lamps substantially similar to those produced by Bauer. Both manufacturers, who were charged in separate counts with trade dress infringement, agreed to an injunction to cease production of the offending lamps.

It was not necessary that Shaffer and Levi actually manufacture the infringing lamps to make them liable for trade dress infringement. A person who knowingly participates in furthering the trade dress infringement is liable as a contributing party. *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 295 F.Supp. 479, 499–500 (S.D.N.Y.1968). Furthermore, since trade dress infringement is a tort, they may be held responsible as joint tort-feasors. J. McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 25:3 (2d ed. 1984).

Shaffer and Levi challenge the jury's finding that the plaintiff proved a likelihood of confusion. The district court properly instructed the jury on the factors necessary to prove this element. The instruction was based on a check list set out in *Varitronics Systems, Inc. v. Merlin Equipment, Inc.*, 682 F.Supp. 1203, 1206 (S.D.Fla.1988). Here the district court charged the jury:

> In determining whether there is a likelihood of confusion you may consider among other things the following: First, the similarity of design; the similarity of the products; third, the identity of retail outlets and purchasers; fourth, the similarity of advertising media used; fifth, the defendants' intent in adopting its trade dress; sixth, actual confusion; seven, the degree of care purchasers are likely to exercise when selecting products of the type sold by the parties; and eight, the presence and prominence of the name on the defendants' products.

R17–165.

There is no claim that Bauer uncovered any *actual* confusion. Such a showing is not essential to a recovery. What is necessary is proof of the *likeli-*

---

6. *See* 17 U.S.C.A. § 101 *et seq.* (West 1977).

*hood* of confusion. *E. Remy Martin & Co. v. Shaw–Ross International Imports*, 756 F.2d 1525, 1529–30 (11th Cir.1985). There was more than enough evidence to establish that Shaffer and Levi were out to destroy Bauer's position in the marketplace. In fact, the evidence is clear that they deliberately intended to copy Bauer's lamps in their effort to seek revenge. Intent to copy in itself creates a rebuttable presumption of likelihood of confusion. *Varitronics*, 682 F.Supp. at 1206–07; *Am-Brit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1542 (11th Cir.1986).

Lastly, Shaffer and Levi assert that the award of damages for Counts I and II were not authorized by the evidence. For the reasons stated above the evidence was adequate to find liability on these counts and the evidence of the loss in revenue by Bauer was before the jury with sufficient certainty so that we cannot say the damages are without adequate support.

■■■ The jury returned a verdict for punitive damages on the count alleging intentional interference with business relationships without first finding that the plaintiff was entitled to any compensatory damages. The defendants claim that this failure to provide for compensatory damages invalidated the award of punitive damages. They cite Fla.Stat.Ann. section 768.73 (West 1982) as authority for this proposition. In pertinent part section 768.73 provides:

> (1)(a) In any civil action based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty that involves willful, wanton, or gross misconduct, the judgment for the total amount of punitive damages awarded to a claimant shall not exceed three times the amount of compensatory damages awarded to each person entitled thereto by the trier of fact, except as provided in paragraph (b). However, this subsection does not apply to any class action.

*Id.*

This argument is without merit for several reasons. First, the issue was raised for the first time on appeal. *Kelite Products, Inc. v. Binzel*, 224 F.2d 131, 145 (5th Cir. 1955) (asserting issue of punitive damages on appeal for the first time precluded consideration by appellate court). Second, the effective date of the act is July 1, 1986. Though the action was filed in August 1986, the tortious acts occurred before July 1, 1986. According to the Florida courts, the statute cannot be applied retroactively. *Mudano v. St. Paul Fire and Marine Insurance Company*, 543 So.2d 876, 877 (4th DCA 1989). Third, this court certified to the Florida Supreme Court the question whether, under Florida law, the grant of punitive damages can stand in the absence of compensatory damages. *Lohr v. Florida Department of Corrections*, 835 F.2d 1402, 1403 (11th Cir.1988). The Florida Supreme Court answered the question in the affirmative stating that a finding of liability without a finding of compensatory damages is the same as an allowance of nominal damages. *Ault v. Lohr*, 538 So.2d 454, 455 (Fla.1989). Therefore, the district court did not err in allowing punitive damages.

For the forgoing reasons, the district court's judgment denying the motions for a directed verdict or a judgment notwithstanding the verdict is AFFIRMED.