**CARILLON IMPORTERS LTD., Plaintiff,**

v.

**The FRANK PESCE GROUP, INC., et al., Defendants.**

**Bankruptcy No. 95–1795–CIV.**

United States District Court, S.D. Florida.

Jan. 23, 1996.

Harley S. Tropin, Miami, Florida, Lisa Pearson, New York City, for Plaintiff.

Michael Cesarano, Miami, Florida, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

HURLEY, District Judge.

This matter comes before the Court upon plaintiff's Motion for Preliminary Injunction. The motion arises in litigation between two sellers of imported ultra premium vodka over trade dress infringement. Plaintiff seeks to enjoin defendant's alleged imitation, dilution, or tarnishing of plaintiff's trade dress and alleged misconduct in advertising, distributing, and marketing vodka. For the reasons given below, the Court enjoins defendant from any continued infringement of plaintiff's trade dress.

### I. Facts

Plaintiff, Carillon Importers, Ltd. ("Carillon"), is the exclusive distributor of Stolichnaya Cristall vodka, an ultra premium vodka that was the first of its kind in the United States when introduced in 1989. Ultra premium vodkas are a luxury product with a taste, quality, and cachet that allow them to sell for a premium price. To develop this market niche, Stolichnaya Cristall was introduced with a black label that differentiated it from the other white label vodkas that comprised the Stolichnaya line. The product, including the new label, has been heavily advertised since its introduction, usually in such upscale media as the Architectural Digest, Gourmet, The New York Times Magazine, and Vanity Fair. Carillon alone has spent more than $3 million on advertising since it assumed the distributorship in February of 1994. Carillon has also obtained a registered trademark, "FLAWLESS," to enhance the distinctive image of this particular vodka.

In approximately May of 1995, defendant, The Frank Pesce Group, Inc., and affiliated organizations ("Pesce" or "Pesce organizations"), another distributor of imported ultra premium vodka, introduced their product,

Cristall Moscow Signature Series ("Cristall Moscow"), to the domestic market. The allegedly offending vodka is sold in many of the same retail locations as the Stolichnaya Cristall product, often on the same shelf. Cristall Moscow sells for as much as six dollars less than Stolichnaya Cristall, and unlike Stolichnaya Cristall, is promoted through discount coupons at the point of sale.

The product was introduced with a label approved by Mr. Frank Pesce, the principal of the defendant Pesce organizations. The nature of the media used for advertising Cristall Moscow is not clear, but the evidence reflects that the Pesce organizations or their agents employed the "FLAWLESS" trademark in their advertising without Carillon's permission. The Pesce organizations also used Carillon's copyrighted print advertisements, modifying them only slightly to substitute the different name and distributor. Per stipulation at oral argument, Pesce has agreed to cease any use of the "FLAWLESS" trademark or the copyrighted advertisements by themselves or their agents. The parties also agreed at oral argument that use of the word "Cristall" is not at issue, it being the heart of a suit between the producers of the respective vodkas. *See Moscow Distillery Cristall v. PepsiCo, Inc.*, No. C95–0226WD (W.D.Wash. filed Feb. 8, 1995).

The only material dispute before the Court for purposes of this motion is the alleged infringement of the Stolichnaya Cristall trade dress by Pesce's choice of labeling and packaging for Cristall Moscow. As the exclusive distributor for Stolichnaya Cristall, Carillon has standing to pursue these allegations. *See Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137, 142 (5th Cir.1972) (upholding standing of exclusive distributor to bring action under section 43(a) of the Lanham Act).

## II. Applicable Law

Trade dress is protected under section 43 of the Lanham Act. 15 U.S.C. § 1125. Section 43(a) provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a).

■ The rationale of the Lanham Act is "to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S.Ct. 2753, 2760, 120 L.Ed.2d 615 (1992) (citation omitted). Trade dress is defined by the Eleventh Circuit as a product's "total image ... includ[ing] features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). The trade dress at issue in this case is the total image of Stolichnaya Cristall brand as created by plaintiff's vodka bottle, label design, label graphics, and overall color scheme.

■ To warrant a preliminary injunction against infringement, Plaintiff must show:

(1) a substantial likelihood that plaintiff will prevail on the merits;

(2) a substantial threat that the plaintiff will suffer irreparable harm if the injunctive relief is not granted;

(3) a threatened injury to the plaintiff which outweighs the threatened harm an injunction would cause the defendant; and

(4) the injunction must not disserve the public interest.

*Swatch Watch S.A. v. Taxor, Inc.*, 785 F.2d 956, 958–59 (11th Cir.1986).

■ In a trade dress infringement case, likelihood of success on the merits requires proof to a preponderance of the evidence that (1) the trade dress is inherently distinctive or has acquired secondary meaning; (2) it is primarily non-functional; and (3) the defendant's trade dress is confusingly similar. *Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1170 (11th Cir.1991); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). The last prong of the test is the most important and is also referred to as the "likelihood of confusion." *See AmBrit*, 812 F.2d at 1538.

### III. Analysis

#### A. Inherent Distinctiveness and Secondary Meaning

■ Distinctiveness is defined as whether the appearance of the product is sufficient to "allow consumers to identify the product from the trade dress." *Bauer*, 941 F.2d at 1170. Essentially, this inquiry asks whether the labeling and packaging of Stolichnaya Cristall is distinct enough on its face to be recognizable by consumers as having a specific origin or source.

■ Distinctiveness is measured along an increasing scale: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos*, 505 U.S. at 767, 112 S.Ct. at 2757 (citation omitted). This characterization adapts the standards for distinctiveness under trademark law to the context of trade dress law. *Id.* Under this approach, to be inherently distinctive the trade dress must be more than merely descriptive. *Two Pesos*, 505 U.S. at 767, 112 S.Ct. at 2757. For example, an advertisement with four boxes labeled north, south, east, and west, each containing the locations and phone numbers of different branches of the advertiser in those quadrants of the city, is not inherently distinctive because it is merely descriptive. *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir.1986) (applying the same analysis endorsed in *Two Pesos*); *see also AmBrit*, 812 F.2d at 1537 n. 20, 23 (citations omitted). As a rule, the more arbitrary the design, the more inherently distinctive the trade dress.

■ In addition to the factors recognized by the Supreme Court on this subject, cases in the Eleventh Circuit also evaluate distinctiveness in terms of (1) whether a shape or design is common, (2) whether it is unique in a particular field, and (3) whether it is a mere refinement of a well-known form of ornamentation for a particular class of goods. *AmBrit*, 812 F.2d at 1536 (citing the test first established in *Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A.1977)). The essential purpose of this inquiry is to withhold protection of common forms of presentation in a particular field of competition. *See Reed-Union Corp. v. Turtle Wax, Inc.*, 869 F.Supp. 1304 (N.D.Ill.1994).

■ Thus, for example, an arctic sun and a polar bear on a blue ice cream wrapper are inherently distinctive because they are suggestive of the coldness of the product and are not merely descriptive of the ice cream. *AmBrit*, 812 F.2d at 1537. However, an industry custom, such as packaging lime-flavored soda in a green twelve-ounce can, would not be inherently distinctive. *Paddington Corp. v. Attiki Importers & Distrib.*, 996 F.2d 577, 583 (2d Cir.1993). Similarly, generic packages or symbols are not inherently distinctive by themselves. Thus, a standard size plastic bottle is not by itself a basis for trade dress protection, nor is a shining car on a bottle of car wax. *Id.* at 584 (dicta). As a matter of policy, color alone is not protected as trade dress, unless it has acquired a secondary meaning. *See Qualitex Co. v. Jacobson Prods. Co.*, — U.S. —, —, 115 S.Ct. 1300, 1303, 131 L.Ed.2d 248 (1995) (trademark case); *AmBrit*, 812 F.2d at 1548 (citation omitted). Rather than any one feature, though, it is "the combination of elements and the **total impression** that the dress gives to the observer that should be the focus of a court's analysis of distinctiveness." *Paddington*, 996 F.2d at 584 (citing *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 936 (7th Cir.1989), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990)) (emphasis added).

■ Applying these principles to the facts of this case yields the conclusion that the

trade dress of Stolichnaya Cristall creates an overall impression that is inherently distinctive. Unlike the intricately shaped bottles of Absolut, Finlandia, and the other vodkas in evidence before the Court, Stolichnaya Cristall employs a conventionally shaped, clear glass wine bottle that is stamped "Made in the U.S.S.R." The bottle has a black plastic neck wrapping and a narrow black label. The decorative touches on the label include the product's name in prominent white and gold lettering, gold scrollwork around the product's name, and small red lettering below the name that touts the product's characteristics. The bottle also has a second small label comprised of four overlapping gold medallions that is located on the neck of the bottle. Despite the commonplace use of some of these individual components in the marketing of alcoholic beverages other than ultra premium vodkas, their use here is a fanciful addition to the vodka market. Combined, these components have an elegant, minimalist style that is suggestive of refinement and quality. Such a design is distinctive in the vodka marketplace and protectable as trade dress. Upon such a finding, it is not necessary for the Court to evaluate whether Stolichnaya Cristall has also acquired a secondary meaning. *See Two Pesos,* 505 U.S. at 775, 112 S.Ct. at 2761.

## B. Non-functional Design

A product's trade dress is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 983 n. 27 (11th Cir.1983) (citation omitted). Functionality is a legal conclusion that a design is "so utilitarian in nature that by affording it ... protection, effective competition is foreclosed." *Jordan Int'l, Inc. v. United Indus. Sales Org. Inc.,* 699 F.Supp. 268, 270 (S.D.Fla.1988). In other circuits, for example, functionality is an affirmative defense rather than an element of the prima facie case. *Abbott Lab. v. Mead Johnson & Co.,* 971 F.2d 6, 20 (7th Cir.1992). That elements of the package are functional does not render the package as a whole unprotectable. *Am-Brit,* 812 F.2d at 1538.

In many ways, functionality is a close corollary to distinctiveness, and it reinforces the idea that the law protects a product's image in the mind of a consumer rather than aspects of a product that are required for its use. Thus, in the Eleventh Circuit, a bottle with a neck on it would probably not constitute protected trade dress because a neck is a functional requirement on a bottle, or at least a competitive necessity. In contrast, a bottle with a swan shaped neck on it would be protectable because of the nonfunctional whimsy of its neck design. Although, the Stolichnaya Cristall bottle alone is quintessentially functional in its common, wine bottle shape, the combination of elements comprising Stolichnaya Cristall's trade dress is not merely functional. Among all the bottle shapes, labels, and color schemes available to a producer distributor, the selection of a narrow, clear glass, Russian wine bottle, sealed in black neck wrapping and labeled in black with white, gold, and red lettering, is decidedly non-functional.

## C. Confusingly Similar

Having concluded that Stolichnaya's trade dress is sufficiently distinctive and nonfunctional to merit protection, the balance the Court's inquiry is into the likelihood of a purchaser being confused when confronted with the trade dress of Pesce's Cristall Moscow. At the outset, the Court notes that evidence of actual confusion is not necessary to a finding of a likelihood of confusion; it is simply good proof of the likelihood of confusion. *See E. Remy Martin & Co. v. Shaw–Ross Int'l Imports,* 756 F.2d 1525, 1529 (11th Cir.1985). Instead, the evaluation turns on the following factors, no one of which is dispositive:

(1) the strength of trade dress or mark;

(2) the similarity between the designs at issue;

(3) the similarity of the products;

(4) the identity of retail outlets and purchasers;

(5) the similarity of advertising media used;

(6) the defendant's intent; and

(7) actual confusion.

*AmBrit,* 812 F.2d at 1538; *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1514 (11th Cir. 1984). An eighth factor may apply as well: the degree of care purchasers are likely to exercise when selecting products of the type sold by the parties. *See Bauer,* 941 F.2d at 1171. Since this eighth factor is widely used in other circuits, *see Reed–Union,* 869 F.Supp. at 1307, 1310, the Court will consider it as part of the test.

### 1. Strength of Trade Dress

▮ The niche-defining status of Stolichnaya Cristall as the first ultra premium vodka is of some weight in assessing the strength of the Stolichnaya Cristall dress. The undisputed evidence is that Stolichnaya Cristall created this class of vodka in 1988. Between 1989 and 1994, Stolichnaya Cristall sold approximately $55 million worth of its product at retail. Present sales approximate the same rate. The trade dress is heavily advertised in Carillon's multi-million dollar advertisement campaign, and the Stolichnaya line itself has been on the market for more than twenty years, during most of which time it was the exclusive Russian vodka imported into the United States. As noted above, the trade dress itself is also inherently distinctive. In light of these facts, the Court finds that Stolichnaya Cristall's trade dress is strong and therefore merits protection. *See AmBrit,* 812 F.2d at 1539.

### 2. Similarity Between the Designs

When goods are sold side-by-side, as here, a side-by-side comparison is a proper part of evaluating similarity between designs. *Reed–Union,* 869 F.Supp. at 1309 (citation omitted). Like Stolichnaya Cristall and unlike the dozen or so other vodkas in evidence before the Court, Cristall Moscow is bottled in a conventionally shaped, clear-glass wine bottle that is stamped "Made in the U.S.S.R." Also like Stolichnaya Cristall the Pesce product has black plastic neck wrapping, a black label, and decorative touches on the label, including gold scrollwork around the product's name, the product's name in prominent white and gold lettering, and small red lettering below the name.

So similar is the Cristall Moscow to the Stolichnaya Cristall that from a few feet away, one's first inclination is to lean closer to these two bottles in order to look for a means of distinguishing them. Only upon closer inspection can one discern the differences. For example, on the upper left corner of the label of the Cristall Moscow is a diagonally oriented strip in light green with white lettering that says "Original." Rather than a small label of gold medallions on the neck of the bottle, as the Stolichnaya bottle has, the Moscow Cristall bottle has a small label in black and gold, located at the near the base of the bottle that identifies the distillery and the distributor. The content of the red-lettered text is completely different on each bottle. Finally, the name of each product is different. The overall impression is that Cristall Moscow is highly similar to the Stolichnaya Cristall dress.

### 3. Similarity of the Products

In that all vodkas are clear, the differentiation between these products is not readily apparent. To confuse matters further, Pesce has demonstrated that the vodkas both come from the original Moscow Cristall Distillery and that Stolichnaya Cristall may now be produced at other distilleries as well. Carillon, on the other hand, gave evidence about the elaborate quality control that is a feature of the Stolichnaya brand imported to the United States. On this point, the Court's conclusion is mixed. The vodkas may be substantially similar in some respects but more variable in quality, or they may in fact be identical. In the absence of clear evidence either way, this factor does not favor either party; however, the possible similarity of the vodkas themselves should not mask the fundamental question at issue in this case: whether Pesce set out to ride the good name and goodwill accorded to Stolichnaya Cristall.

### 4. Identity of the Retail Outlets, Purchasers, and Advertising Media

The parties did not dispute that the vodkas are sold in the same outlets, frequently side-by-side. Pesce's marketing tactics and liter-

ature clearly targeted Stolichnaya Cristall retailers in attempting them to favor Cristall Moscow instead. Presumably the ultimate purchasers of an ultra premium vodka are also identical, although Pesce pursued a coupon discounting strategy that Carillon ardently eschewed.

Pesce also adopted many of the same advertising strategies of Carillon, to the point of running unauthorized facsimiles of copyrighted Carillon advertisements and employing Carillon's "FLAWLESS" trademark without permission. The media included magazines, floor displays, and printed releases to the trade. Thus, there is identity to a substantial degree in points of sale, purchasers and advertising.

### 5. Pesce's Intent

Although there is some dispute about whether Frank Pesce, the President of the Frank Pesce Group and a principal of other defendant organizations, knew individually about each of the flagrant copyright and trademark infringements in the advertising described above, the usurpation of these items was so blatant that the companies he leads and their agents cannot disclaim responsibility. Evidence reveals that some of the Carillon advertisements were literally "whited out" and modified for use in promoting Cristall Moscow vodka. There is also substantial evidence that Pesce's agents made numerous oral representations to the trade about the validity of Carillon's distribution rights and about the status of Stolichnaya Cristall after the introduction of Cristall Moscow. This pattern of conduct represents overwhelming evidence of an intent to target Stolichnaya Cristall. When viewed in light of the great similarity in trade dress and the distinctness of the ultra premium vodka market, the only conclusion is that Pesce intended to confuse consumers and to lure them into purchasing Cristall Moscow as a result of this confusion.

 This conclusion alone is sufficient to resolve the element of likelihood of confusion against Pesce. If the evidence is clear that defendant deliberately intended to copy plaintiff's trade dress, then "intent to copy in itself creates a rebuttable presumption of likelihood of confusion." *Bauer,* 941 F.2d at 1172 (citations omitted). The idea is that rivals are free to compete, but not free to confuse the purchaser. As an added rationale, it is only equitable that a defendant should be held accountable for intentional copying, even if done poorly, because the copying demonstrates the defendant's belief that the copying would cause confusion sufficient to benefit the defendant at the expense of the plaintiff. *See Paco Rabanne Parfums, S.A. v. Norco Enter., Inc.,* 680 F.2d 891, 893 (2d Cir.1982) (issuing a preliminary injunction against intentional copying of trade dress).

### 6. Actual Confusion and Degree of Care Exercised by Consumers

Even though proof of intent resolves the likelihood of confusion element of a trade dress infringement claim, the Court will address the remaining factors. No evidence is in the record of actual confusion, but as noted above, none is necessary to establish only a likelihood of confusion. *See E. Remy Martin, supra.* The degree of care exercised by consumers also is not a significant factor. On one hand, one might posit that the consumer of an ultra premium vodka selling for almost $30 per bottle is a discerning person, able to avoid actual confusion, despite Pesce's tactics. Perhaps to such a consumer, the absence of the Stolichnaya brand name alone would be enough of a distinction to avoid all confusion.

On the other hand, the Supreme Court has stated that a key aspect of the Lanham Act's protection is to allow the user of a trade dress "to seek wider identification among potential customers." *Two Pesos,* 505 U.S. at 771, 112 S.Ct. at 2759. On this basis, the *Two Pesos* Court held that no secondary meaning—that is, no special association by the consumer between the good and the producer—is necessary under the Lanham Act. *Id.* at 775, 112 S.Ct. at 2761. This rationale suggests that, in the case of alcohol purchases, trade dress protection should include the naive new consumer within its ambit. Thus, if anything, these last two factors, actual confusion and consumer sophistication, are neutral between the parties or slightly

favor Carillon in its right to pursue new customers.

### 7. The Court's Findings on Likelihood of Confusion

Before concluding whether Carillon has met the third element of its case of trade infringement, the Court must consider Pesce's arguments that any finding of confusion would be improper because (1) trade dress is inseparably bound up with the ownership of the Cristall trademark, which is the subject of the litigation in the Western District of Washington and (2) the Russian government granted Pesce's source for the product, the Moscow Distillery Cristall ("MDC"), the right to use the trade dress at issue in this case after the breakup of the Soviet Union. The Court asked the parties to brief the former argument and rules in light of their responses.

■■■ The argument that trademark rights and trade dress go together inseparably is essentially an invitation to this Court to abstain from ruling because the trademark matter is already before the Washington district court. *See Moscow Distillery Cristall v. PepsiCo, Inc.,* No. C95–0226WD (W.D.Wash. filed Feb. 8, 1995). The Washington litigation concerns the MDC's challenge to PepsiCo's attempt to register "Stolichnaya Cristall" as a trademark. MDC and PepsiCo produce the two vodkas that are distributed by the parties in the instant case. Carillon distributes PepsiCo's Stolichnaya Cristall product, and Pesce distributes MDC's product under the name of Cristall Moscow signature series. Although PepsiCo also accuses the Moscow Distillery Cristall of trade dress infringement in PepsiCo's answer and counterclaim, PepsiCo has not joined Pesce in that case or attempted to redress the actions of Pesce through that lawsuit. In fact, the counterclaim arose between those parties prior to the introduction of Pesce's product to this jurisdiction, and it is not even clear that Pesce is within the personal jurisdiction of the Washington court because of the geographically limited distribution to date by Pesce's Florida based companies. Thus, the Washington litigation is materially different from the instant case, and Pesce's actions in this case cry out for close and immediate scrutiny.

■■■ Even more significantly, as a matter of law, trade dress is a form protection accorded to a product distinct from trademark protection. The Lanham Act creates a separate cause of action for trade dress infringement. *Original Appalachian Artworks, Inc. v. Toy Loft,* 684 F.2d 821, 831 (11th Cir.1982). Although many of the analyses of trademark law also apply to trade dress, *see Two Pesos,* 505 U.S. at 773, 112 S.Ct. at 2760, no trademark is needed to prove trade dress infringement. *Id.* at 769, 112 S.Ct. at 2758 (discussing elements of an infringement action). For purposes of the instant action, both parties stipulated at oral argument that the use of the word CRISTALL, the object of the Washington litigation, is not at issue. In fact, if Pesce had used "Cristall" on a pink label, attached to a squat, opaque bottle—or some other trade dress easily distinguishable from that of Stolichnaya Cristall—the instant action would not lie. It is the choice of labeling by Pesce that gives rise to this action, regardless of the presence or absence of a trademarked word.

■■■ Pesce's second argument is that the Russian government, in conferring trademark and trade dress protection to MDC in Russian markets, determines the ownership of trade dress for products in the United States market. Specifically, Pesce alleges that its agreement in 1994 with MDC confers upon Pesce the right to use trade dress awarded to MDC by Russian authorities. The flaw in this argument is that foreign law is irrelevant and inadmissible in disputes over rights to marks under United States law. *E. Remy Martin,* 756 F.2d at 1531–32 (rejecting a French agreement limiting use of a mark in France in a dispute over registration of wine and brandy trademarks). This rule reflects the concept of territoriality which is a basic tenet of intellectual property law. *See Financial Matters, Inc. v. PepsiCo, Inc.,* 806 F.Supp. 480 (S.D.N.Y.1992) (rejecting Russian determination of property rights in the name Stolichnaya in awarding a United States trademark).

As additional proof of the irrelevance of the actions of the Russian government in regulating United States trade dress, both the evidence in this case and the pleadings in the Washington case demonstrate incontestably that the Stolichnaya Cristall label was designed by PepsiCo. This trade dress was part of the company's effort to introduce the first ultra premium vodka in the United States in 1989. The significance of this finding is that, PepsiCo, as the producer of the product now distributed exclusively by Carillon, has used the Stolichnaya Cristall trade dress in this country for the five years prior to the appearance of Pesce's product on the domestic market. For the past two years now, Carillon has continued to develop the goodwill and business prospects for the Stolichnaya Cristall trade dress by investing millions in advertising and promotion. As noted above, an exclusive distributor has the standing to demand protection for such trade dress. Thus the mere fact that a Russian distiller with possible rights to equivalent trade dress in the Russian market purports to assign those rights to Pesce in the United States is of no weight. "Our concern must be the 'business and goodwill attached to United States [marks].'" *E. Remy Martin*, 756 F.2d at 1531. These qualities clearly belong to Stolichnaya Cristall.

In light of this analysis and the Court's finding above that Pesce intended to trade upon the goodwill and reputation associated with the trade dress of Stolichnaya Cristall, there is a presumptive finding of likelihood of confusion. Pesce did not rebut this presumption, but merely stipulated to ceasing and desisting from future infringements of the copyrighted advertisements and the "FLAWLESS" trademark. Furthermore, as an independent basis for this finding, the first six factors of the *AmBrit* test favor Carillon's argument that the products are confusingly similar. Thus, on the basis of Pesce's intent and on a balancing of the factors, the Court concludes that there is a likelihood of confusion between the trade dress of Stolichnaya Cristall and the trade dress of Cristall Moscow.

## D. Preliminary Injunction

 The Court's conclusion that all three elements of the case for trade dress infringement have been met effectively resolves the likelihood of success on the merits at this juncture in favor of the plaintiff, Carillon. In trade dress and trademark cases, a sufficiently strong showing of likelihood of confusion may also constitute a showing of a substantial threat of irreparable harm. *E. Remy Martin & Co. v. Shaw–Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir.1985). This showing may even amount to a presumption of irreparable harm. *Southern Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 187–88 (citing cases). Such is the case here.

This linkage between these prongs of the test for a injunction against trade dress infringement is in keeping with the fact that the likelihood of confusion has been called the "touchstone" of the test for infringement of trade dress. *AmBrit*, 812 F.2d at 1538. Thus, resolving the likelihood of confusion will also tend to determine the remaining two requirements for injunctive relief. For example, another factor in the likelihood of confusion analysis, the strength of the trademark, also bears on the balance of hardships. The stronger the trade dress, the more deserving it is of protection. *See AmBrit*, 812 F.2d at 1539. As the Court concluded above, the Stolichnaya Cristall trade dress is strong and of long standing; thus, the balance of hardships also favors the issuance of an injunction.

Finally, the Lanham Act's protection of the public from being mislead as to the source of a product often favors injunctive relief, if a likelihood of confusion arises. The instant case is such a case. Accordingly, the Court enjoins Pesce from infringing on the trade dress of Carillon and its Stolichnaya Cristall ultra premium vodka.

## IV. Decretal Provisions

1. Defendants shall cease immediately from any unauthorized use of plaintiff's copyrighted advertisements and promotional materials, as stipulated at oral argument.

2. Defendants shall cease immediately from any unauthorized use of plaintiff's FLAWLESS trademark, as stipulated at oral argument, including the seeming misuse of this trademark on the current label of Cristall Moscow as submitted into evidence.

3. Defendants shall cease immediately from distributing any bottles of Cristall Moscow Signature series packaged and/or labeled with features that are substantially similar to those used in the packaging and labeling of Stolichnaya Cristall. Among the prominent features for Defendants to consider in avoiding such similarities are: the typestyles and color scheme for the product name, the use of gold scrollwork above and below the product name, the typestyle and color of the text below the scrollwork, and the combination of a black label with a plain black plastic neck wrapper on a conventionally shaped wine bottle.

4. Within forty-five days of this order, Defendants shall alter or re-label all bottles already bearing the infringing trade dress that have previously been distributed to retail outlets by Defendants but which are awaiting sale to the ultimate consumer. To comply with this requirement, Pesce may recall the unsold bottles or may elect any alternative method, including on-premises re-labeling of the offending bottles, that will effectuate this injunction within the time period prescribed.

**DONE** and **SIGNED.**