**Joshua ETS–HOKIN, Plaintiff–Appellant,**

v.

**SKYY SPIRITS, INC., a Delaware corporation; Maurice Kanbar; Daniel Dadalt; Needham; Does 1 through 50, Defendants–Appellees.**

**No. 98–17072.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2000.

Filed Aug. 18, 2000.

Charles D. Ossola and Jule L. Sigall, Arnold & Porter, Washington, D.C., and

Christopher C. Welch, San Francisco, California, for the appellant.

James Wesley Kinnear and Karen D. Fineran, Makoff Kinnear Counsel PC, San Francisco, California, for the appellees.

Victor S. Perlman, Princeton Junction, New Jersey, for amicus American Society of Media Photographers, Inc.

Before: HUG, Jr., Chief Judge, and D.W. NELSON and M. MARGARET McKEOWN, Circuit Judges.

Opinion by Judge McKEOWN; Dissent by Judge D.W. NELSON.

McKEOWN, Circuit Judge:

This case requires us to apply copyright principles to stylized photographs of a vodka bottle. Specifically, we must decide whether professional photographer Joshua Ets–Hokin's commercial photographs, dubbed "product shots," of the Skyy Spirits vodka bottle merit copyright protection. Given the Copyright Act's low threshold for originality generally and the minimal amount of originality required to qualify a photograph in particular, we conclude that Ets–Hokin's photographs are entitled to copyright protection.

We also conclude that the district court erred in analyzing this case through the lens of derivative copyright. The photographs at issue cannot be derivative works because the vodka bottle-the alleged underlying work-is not itself subject to copyright protection. Accordingly, we reverse the grant of summary judgment for Skyy Spirits and remand for consideration of whether infringement has occurred.

## BACKGROUND

### I. THE STORY

The centerpiece of this case and the subject of the photographs is a vodka bottle, shaped like a wine bottle, with boldly colored blue glass, a "pilfer-proof" cap, and a rectangular label. The label, which has a shiny blue background and a thin gold border, includes text that reads as follows:

SKYY
VODKA®

SKYY SPIRITS INC., SAN FRANCISCO
40% ALCOHOL BY VOLUME (80 PROOF)
DISTILLED IN AMERICA FROM AMERICAN GRAIN

The text is in various fonts and sizes, all colored gold, except for "VODKA," which is white. These are the label's only adornments; there are no pictures, illustrations, or other noteworthy features on the label or elsewhere on the bottle.

Ets–Hokin is a professional photographer who maintains a studio in San Francisco. Maurice Kanbar, the president of Skyy Spirits, Inc. ("Skyy"), and Daniel Dadalt, an employee of the company, visited his studio in the summer of 1993. During this visit, Kanbar and Dadalt reviewed Ets–Hokin's photograph portfolio and subsequently hired him to photograph Skyy's vodka bottle.[1] Ets–Hokin then shot a series of photographs and ultimately produced and delivered three photographs of the bottle. In all three photos, the bottle appears in front of a plain white or yellow backdrop, with back lighting. The bottle seems to be illuminated from the left (from the viewer's perspective), such that the right side of the bottle is slightly shadowed. The angle from which the photos were taken appears to be perpendicular to the side of the bottle, with the label centered, such that the viewer has a "straight on" perspective. In two of the photo-

---

1. Ets–Hokin was also hired to take photographs of mixed drinks containing Skyy vod- ka, but on appeal he does not raise any claims with regard to those photographs.

graphs, only the bottle is pictured; in the third, a martini sits next to the bottle.

Under the terms of a confirmation of engagement, signed by Dadalt on Skyy's behalf, Ets–Hokin retained all rights to the photos and licensed limited rights to Skyy. The parties dispute the scope of the license, including whether Skyy was licensed to use the photographs in advertising or in publications distributed to the public. After the confirmation was executed, Ets–Hokin applied to the U.S. Copyright Office for a certificate of registration for his series of photos, and a certificate was issued effective on March 10, 1995. Section six of the registration form, which instructs the applicant to "[c]omplete both space 6a & 6b for a derivative work," was left blank.

Skyy claims that it found Ets–Hokin's photographs unsatisfactory and thus hired other photographers to photograph the bottle. In dealing with these photographers, Skyy sought to purchase all rights to the photographs of the bottle, as opposed to the license arrangement it had agreed to with Ets–Hokin. One photographer refused to sell his photograph outright, insisting on licensing. Two other photographers were apparently willing to sell all rights to their photographs.

Ets–Hokin brought suit against Skyy and three other defendants[2] for copyright infringement, fraud, and negligent misrepresentation. He alleged that the company used his work in various advertisements, including in *Deneuve* magazine and the *San Francisco Examiner,* and on the side of a bus, without his permission and in violation of the limited license. He also alleged that Skyy used photographs taken by the other photographers that mimicked his own photos; specifically, he claimed that these photographers improperly used his photographs to produce virtually identical photos of the vodka bottle.

## II. THE DISTRICT COURT'S RULING

The defendants argued that Ets–Hokin's photographs were not subject to copyright protection. Contending that Ets–Hokin's photos of the Skyy bottle were derivative works, the defendants moved for summary judgment on the grounds that Ets–Hokin raised no genuine issue of material fact to support the validity of his copyright or his claim of infringement. The district court granted the defendants' motion on the ground that Ets–Hokin failed to establish the validity of his copyright. As a result, the court did not reach the question of infringement. The court also dismissed Ets–Hokin's claims of fraud and negligent misrepresentation. *Ets–Hokin v. Skyy Spirits, Inc.,* No. C 96–3690 SI, 1998 WL 690856 (N.D.Cal. Sept.28, 1998). On appeal, only the copyright claims are at issue.

In analyzing whether Ets–Hokin had a valid copyright, the court noted that, by establishing that the photos were derivative works, the defendants could rebut the statutory presumption of validity that Ets–Hokin enjoyed by virtue of holding a copyright registration. The court then held that the product shots were derivative works, reasoning that the photos were based on a preexisting work, namely, the Skyy vodka bottle. Having found that "the Skyy bottle is clearly a preexisting work," the court further held that the bottle's "trade dress (the blue bottle, the gold label, etc.) and copyrighted material (the label and all non-utilitarian features of the bottle)" rendered it a "protected and copyrighted work."

Once Ets–Hokin's photos were determined to be derivative of the vodka bottle, the court applied the standard applicable to derivative works set forth in *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1220–21 (9th Cir.1997) [hereinafter *ERG* ]. Specifically, the court stated:

**2.** The other named defendants are Kanbar, Dadalt, and the advertising firm hired by Skyy. Ets–Hokin did not name the other photographers as defendants.

Because plaintiff's work is a derivative work, to establish the validity of his copyright, he must show *both* (1) that the differences between the two works are more than trivial, i.e., that his photographs are "sufficiently original," and (2) that his copyright will not interfere with Skyy's rights to create derivative works based upon its own bottle.

In its analysis of the photographs as derivative works, the court found that Ets–Hokin did not raise a genuine issue of material fact as to either prong of the *ERG* test, concluding that (1) the photos were insufficiently original to warrant copyright because the differences between the photos and the bottle were not "more than trivial"; and (2) a copyright in the photos would interfere with Skyy's right to create works based upon its own bottle.

## STANDARD OF REVIEW

We review de novo the district court's decision to grant summary judgment. *See ERG*, 122 F.3d at 1216; *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 571 (9th Cir.1987) ("Summary judgments in copyright infringement actions are reviewed de novo."). We likewise interpret the Copyright Act de novo. *See generally Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir.1999) (standard of review for interpretation of a statute). Whether a particular photograph is protected by copyright law is a mixed question of law and fact, also subject to de novo review. *Cf. Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir.1989) ("Issues involving the availability and extent of copyright protection for Harper House's time management system present mixed questions of law and fact" reviewed de novo) (citation omitted).

## ANALYSIS

In order to establish copyright infringement, Ets–Hokin "must prove both valid ownership of the copyright and infringement of that copyright by" the defendants. *ERG*, 122 F.3d at 1217. To address Ets–Hokin's claim, we must first address whether his photographs are entitled to copyright protection. Only if they are do we turn to the issue of infringement.

## I. VALIDITY OF THE COPYRIGHT

Skyy argues, in a nutshell, that the commercial photographs of its vodka bottle are not worthy of copyright protection. We disagree. The essence of copyrightability is originality of artistic, creative expression. Given the low threshold for originality under the Copyright Act, as well as the longstanding and consistent body of case law holding that photographs generally satisfy this minimal standard, we conclude that Ets–Hokin's product shots of the Skyy vodka bottle are original works of authorship entitled to copyright protection. The district court erred in analyzing copyright protection under the rubric of derivative works. To put our holding in context, we summarize the historical treatment of photographs both as artistic expression and as the proper subject of copyright protection.

### A. History of Photography as Copyrightable Artistic Expression

It is well recognized that photography is a form of artistic expression, requiring numerous artistic judgments. As one photojournalist wrote,

> [u]p to and including the instant of exposure, the photographer is working in an undeniably subjective way. By his choice of technical approach (which is a tool of emotional control), by his selection of the subject matter to be held within the confines of his negative area, and by his decision as to the exact, climatic [sic] instant of exposure, he is blending the variables of interpretation into an emotional whole which will be a basis for the formation of opinions by the viewing public.

W. Eugene Smith, *Photographic Journalism*, PHOTO NOTES,. June 1948, at 4, *reprinted in* PHOTOGRAPHERS ON PHOTOGRAPHY 103, 104 (Nathan Lyons

ed., 1966). But these judgments are not the only ones. As the well-known photographer Edward Weston wrote,

[b]y varying the position of his camera, his camera angle, or the focal length of his lens, the photographer can achieve an infinite number of varied compositions with a single, stationary subject. By changing the light on the subject, or by using a color filter, any or all of the values in the subject can be altered. By varying the length of exposure, the kind of emulsion, the method of developing, the photographer can vary the registering of relative values in the negative. And the relative values as registered in the negative can be further modified by allowing more or less light to affect certain parts of the image in printing. Thus, within the limits of his medium, without resorting to any method of control that is not photographic (i.e., of an optical or chemical nature), the photographer can depart from literal recording to whatever extent he chooses.

Edward Weston, *Seeing Photographically,* 9 COMPLETE PHOTOGRAPHER 3200, 3203 (William D. Morgan ed., 1943), *reprinted in* PHOTOGRAPHERS ON PHOTOGRAPHY, *supra,* at 159, 161.

Courts as well as photographers have recognized the artistic nature of photography. Indeed, the idea that photography is art deserving protection reflects a long-standing view of Anglo–American law. Under English law, photographs first received statutory copyright protection under an 1862 law that granted the author of "every original painting, drawing and photograph . . . the sole and exclusive right of copying, engraving, reproducing and multiplying . . . such photograph, and the negative thereof." *See* Keith Lupton, *Photographs and the Concept of Originality in Copyright Law,* 10(9) EUR. INTELL. PROP. REV. 257, 257 & n.7 (1988) (quoting the Fine Arts Copyright Act 1862 § 1).

Three years later, President Abraham Lincoln signed into law a similar statute that made "photographs and the negatives thereof" copyrightable.[3] Act of March 3, 1865, 13 Stat. 540. The impetus for this act was likely due in part to the "prominent role [of photos] in bringing the horrors of the Civil War to the public." 1 WILLIAM PATRY, COPYRIGHT LAW & PRACTICE 244 (1996). In fact, many photographers, most notably Matthew Brady, attained notoriety for their graphic depictions of battle on the front lines; Brady's photographs were some of the first registered for copyright. *Id.* at 248 n. 560. Some twenty years later, the Supreme Court held the statute constitutional. *See Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 58, 4 S.Ct. 279, 28 L.Ed. 349 (1884) ("[T]he Constitution is broad enough to cover an act authorizing copyright of photographs, so far as they are representatives of original intellectual conceptions of the author.").

*Burrow–Giles,* a landmark case involving a photograph of Oscar Wilde, is the first of a line of cases establishing that photography entails creative expression warranting copyright protection, that photography is "an art," and that an individual photograph may be a "work of art." *Id.* at 58, 60, 4 S.Ct. 279. Of particular import here, the Court held that several specific decisions made by the photographer rendered his photograph "an original work of art . . . of a class of inventions for which the Constitution intended that Congress should secure to him the exclusive right to use, publish and sell, as it has done . . . ." *Id.* at 60, 4 S.Ct. 279. Decisions rendering the photograph a protectable "intellectual invention" included: the posing and arrangement of Wilde "so as to present graceful outlines"; the selection and arrangement of background and accessories; the arrangement and disposition of light and shade; and the evocation of the desired expression. *Id.* Courts today contin-

---

**3.** Protection for photographs in the current copyright statute is under 17 U.S.C. § 102(a)(5), which covers "pictorial works."

ue to hold that such decisions by the photographer-or, more precisely, the elements of photographs that *result* from these decisions-are worthy of copyright protection. *See, e.g., Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.") (citations omitted); *Eastern America Trio Prods., Inc. v. Tang Elec. Corp.,* 97 F.Supp.2d 395, 417 (S.D.N.Y. 2000).

■■■■■ Twenty years after *Burrow–Giles,* the Supreme Court laid to rest the notion that use of a picture in advertising would preclude its copyrightability. *See Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903). Writing for the Court, Justice Holmes stated:

> Certainly works are not the less connected with the fine arts because their pictorial quality attracts the crowd and therefore gives them a real use-if use means to increase trade and to help to make money. A picture is none the less a picture and none the less a subject of copyright that it is used for an advertisement. And if pictures may be used to advertise soap, or the theatre, or monthly magazines, as they are, they may be used to advertise a circus.

*Id.* at 251, 23 S.Ct. 298. Thus, whether a photograph is used in (or intended for) a museum, an art gallery, a mural, a magazine, or an advertisement does not bear on its copyrightability. We have ourselves rejected the notion that copyright law treats works intended for advertising differently from other works:

> It is true that a pictorial work is no less a subject of copyright protection because it is used to sell goods. Fabrica attempts to make it appear, however, that advertising materials constitute some separate and distinct subject matter of copyright. That is not and has never been the law. Items otherwise copyrightable will not be denied copy-

right simply because of their advertising purpose, but they do not gain any greater protection than non-advertising materials.

*Fabrica Inc. v. El Dorado Corp.,* 697 F.2d 890, 894 (9th Cir.1983) (internal quotations and citation omitted). *See also National Cloak & Suit Co. v. Kaufman,* 189 F. 215, 217 (1911) (finding copyrightable "pictorial illustrations" of "ladies attired in the latest ... styles" that appeared in a catalog). Instead of looking to the intended or actual use of the photograph, or considering whether its subject matter has commercial value, we evaluate whether it has copyrightable elements.

Cases after *Burrow–Giles* and *Bleistein* confirmed that a photograph of an object is copyrightable. *See, e.g., Rogers,* 960 F.2d at 307 (2d Cir.1992) (photograph of puppies); *Eastern America Trio,* 97 F.Supp.2d at 417 (photographs of "common industrial items" including electrical products); *Pagano v. Chas. Beseler Co.,* 234 F. 963, 964 (S.D.N.Y.1916) (photograph of a scene including the New York Public Library).

These are the foundations of copyright applicable to photographs.

**B. Contemporary Standards for Copyright Protection of Photographs**

■■■■ Under the copyright laws, Ets–Hokin's certificate of registration from the U.S. Copyright Office entitled him to a "rebuttable presumption of originality" with respect to the photographs at issue. *Smith v. Jackson,* 84 F.3d 1213, 1219 (9th Cir.1996) (quoting *North Coast Indus. v. Jason Maxwell, Inc.,* 972 F.2d 1031, 1033 (9th Cir.1992)); 17 U.S.C. § 410(c). In moving for summary judgment, the defendants thus initially had the burden of showing the invalidity of Ets–Hokin's copyright:

> Under the copyright laws, the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding commenced within five years of the copy-

right's first publication. A certificate of copyright registration, therefore, shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights. An accused infringer can rebut this presumption of validity, however. To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.

*ERG*, 122 F.3d at 1217 (citations and internal quotations omitted). *See also Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir.1989) (stating that the presumption "shifts the burden of proof to the defendants to demonstrate why plaintiff's organizers are not copyrightable."). In short, to overcome the presumption of validity, defendants must demonstrate why the photographs are not copyrightable. This they have failed to do, primarily because the degree of originality required for copyrightability is minimal.[4]

■ Addressing the threshold for copyrightability, in *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), the Supreme Court held that "[t]he *sine qua non* of copyright[ability] is originality" and that "[o]riginal, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 345, 111 S.Ct. 1282 (citation omitted). Here there is no dispute over the independent creation of the photographs-they are the result of Ets–Hokin's work alone-so what

we must decide is whether the photographs of Skyy's vodka bottle possess "at least some minimal degree of creativity."

■ *Feist,* which involved listings in a telephone directory, described the requisite degree of creativity as "extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* (citation omitted). When this articulation of the minimal threshold for copyright protection is combined with the minimal standard of originality required for photographic works, the result is that even the slightest artistic touch will meet the originality test for a photograph.

In assessing the "creative spark" of a photograph, we are reminded of Judge Learned Hand's comment that "no photograph, however simple, can be unaffected by the personal influence of the author." *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y.1921). This approach, according to a leading treatise in the copyright area, "has become the prevailing view," and as a result, "almost any[ ] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' [sic] personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken." 1 MELVIN B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 2.08[E][1], at 2–130 (1999) [hereinafter NIMMER]. This circuit is among the majority of courts to have

---

4. In light of the historical connection between copyright in photographs under american and english law, it is noteworthy that the requirement of originality for copyright in photographs is low also under english law. as one commentator observed:

> The requirement of originality for photographs has existed since the fine arts copyright act 1862.... From the beginning, however, the standard of originality was minimal. the issue was considered in *Graves' case*, [L.R. 4 Q.B. 715 (1869),] where the applicant argued that an independent copyright could not subsist in pho-

tographs of pre–existing engravings. In holding that such photographs were entitled to an independent copyright registration under the act of 1862, Blackburn, J, reasoned that: "all photographs are copies of some object, such as a painting or a statue. And it seems to me that a photograph taken from a picture is an original photograph, insofar that to copy it is an infringement of this statute." [*Id.* at 723].

KEITH LUPTON, *Photographs and the Concept of Originality in Copyright Law*, 10(9) Eur. Intell. Prop. Rev. 257, 257 & n.8 (1988).

adopted this view. Thus, we have noted that "courts have recognized repeatedly that the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and 'have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectable elements of a photographer's work.'" *Los Angeles News Serv. v. Tullo,* 973 F.2d 791, 794 (9th Cir.1992) (quoting *United States v. Hamilton,* 583 F.2d 448, 452 (9th Cir.1978)).

■■■ In view of the low threshold for the creativity element, and given that the types of decisions Ets–Hokin made about lighting, shading, angle, background, and so forth have been recognized as sufficient to convey copyright protection, we have no difficulty in concluding that the defendants have not met their burden of showing the invalidity of Ets–Hokin's copyright, and that Ets–Hokin's product shots are sufficiently creative, and thus sufficiently original, to merit copyright protection. *See also Bleistein,* 188 U.S. at 250, 23 S.Ct. 298 ("The least pretentious picture has more originality in it than directories and the like, which may be copyrighted."). Finally, although Ets–Hokin took photos that undoubtedly resemble many other product shots of the bottle-straight-on, centered, with back lighting so that the word "Skyy" on the bottle is clear-the potential for such similarity does not strip his work of the modicum of originality necessary for copyrightability. Indeed, the fact that two original photographs of the same object may appear similar does not eviscerate their originality or negate their copyrightability. *See Feist,* 499 U.S. at 345–46, 111 S.Ct. 1282 ("Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable.").

Having concluded that Ets–Hokin's photos are entitled to copyright protection, we leave to the district court the scope of Ets–Hokin's copyright in the photographs vis-a-vis the claimed infringement.

**C. Derivative Copyright**

We next address the issue of derivative copyright because the district court analyzed the photographs as derivative works. For the reasons set forth below, this is not a derivative works case.

The Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works."[5] Copyright Act of 1976 § 101, 90 Stat. 2541, 2542, 17 U.S.C. § 101. The district court held, and Skyy argues, that Ets–Hokin's photographs are derivative works. The court reasoned that the photographs fell within the statutory definition because they were based on or derived from the Skyy vodka bottle, which the court concluded, without explanation, qualified as an original "preexisting work." After determining that "an original work must be protected, copyrighted or protectable in order for a subsequent work to be 'derivative,'" the district court concluded as follows:

> Here, the Skyy bottle is clearly a preexisting work by the statutory definition. In addition, the bottle includes its trade dress (the blue bottle, gold label, etc.) and copyrighted material (the label and all non-utilitarian features of the bottle) and is thus a protected and copyrighted work.

We have never previously addressed whether a photograph can be a derivative

---

5. The full statutory definition states:

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

work, and specifically, whether a derivative work must be based upon a copyrightable work. In a colloquial sense, of course, a photograph is derived from the object that is its subject matter. As such, one teacher of photography wrote of a photo as being an image "derived from ... the object pictured." Henry Holmes Smith, *Photography In Our Time, in* KALAMAZOO ART CTR., THREE PHOTOGRAPHERS (catalog of exhibition) (Feb.1961), *reprinted in* PHOTOGRAPHERS ON PHOTOGRAPHY, *supra*, at 99, 102. But simply because photographs are in this colloquial sense "derived" from their subject matter, it does not necessarily follow that they are derivative works under copyright law.

As discussed below, the district court erred in adopting the derivative work framework for two reasons: (1) a derivative work must be based on a preexisting work that is copyrightable; and (2) the Skyy vodka bottle is a utilitarian object that is not protected by copyright.

### 1. Preexisting Work Must Be Copyrightable

 Under the Copyright Act, a work is not a "derivative work" unless it is "based upon one or more preexisting works" and, in order to qualify as a "preexisting work," the underlying work must be copyrightable.[6] The Act does not make this point explicitly, nor does it define "work," but a reading of the statute as a whole and its legislative history compel this conclusion.

Turning first to the statute, several provisions point to the requirement for the underlying, "preexisting work" to be copy-

rightable. Under section 106, the "owner of copyright" has "exclusive rights" to "prepare derivative works *based upon the copyrighted work.*" *Id.* § 106(2) (emphasis added). The statute thus presupposes that the preexisting work-that is, the work that underlies the derivative work-is copyrightable. Other provisions buttress this reading.

Under section 102, titled "[s]ubject matter of copyright: [i]n general," copyright protection "subsists ... in original works of authorship." 17 U.S.C. § 102(a). Such "original works of authorship" include not only underlying (preexisting) works but also derivative works and compilations. *See id.* § 103(a) ("The subject matter of copyright ... includes compilations and derivative works"). It is significant that the term "works" is used in defining the "subject matter of copyright" and that all of these types of works are subject to copyright.

It is also significant that the Copyright Act specifically limits the scope of copyright protection for derivative works (and compilations). Under section 103, copyright protection "for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." *Id.* § 103(a). It would make little sense to specify that a derivative work's copyright does not extend to any part of that work using "preexisting material in which copyright subsists" if that material "has been used unlawfully" unless the material is itself copyrightable.[7]

A comparison of how the Copyright Act defines "derivative works" and "compilations" provides an explanation for the use

---

6. This issue does not typically arise. Ordinarily in derivative works cases the underlying work is copyrightable, and courts implicitly recognize copyrightability as a prerequisite to invocation of a derivative rights claim. *See, e.g., Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (discussing a motion picture based upon a magazine story); *Pickett v. Prince,* 207 F.3d 402 (7th Cir.2000) (discussing a guitar based upon the copyrighted symbol associated with the rock legend Prince); *Micro Star v. Formgen Inc.,* 154 F.3d 1107 (9th Cir.1998) (discussing vid-

eo game software based upon other video game software); *ERG,* 122 F.3d 1211 (discussing costumes based upon cartoon characters); *Russell v. Price,* 448 F.Supp. 303 (C.D.Cal.1977) (discussing a movie based upon the play "Pygmalion").

7. ·Interpreting the term "unlawfully" to refer to a violation of the copyright act rather than any other statute is consistent with the legislative history of the act, which speaks· of unlawful use only in connection with copyright violations. *See* H. Rep. No. 94–1476, AT 57

of the term "preexisting material" in section 103 as well as further support for the proposition that the underlying "preexisting work" must be copyrightable. A derivative work, as noted above, is defined as "a work based upon one or more *preexisting works,*" whereas a "compilation" is defined as "a work formed by the collection and assembling of *preexisting materials or of data ....*" *Id.* § 101 (emphasis added). By specifying that a derivative work is based upon a "preexisting work"—as opposed to "preexisting materials or ... data," the basis for a compilation—Congress has set forth a distinction with a difference, a distinction to which we must give meaning. We agree with Nimmer that "[t]he reference to 'preexisting works' in this definition, as compared with the reference to 'preexisting materials' in the definition of a 'compilation' implies that a derivative work, unlike a compilation, must incorporate that which itself is the subject of copyright." 1 NIMMER § 3.01, at 3–3 n.10.[8] This implication becomes even clearer when one considers that the term "work" or "works" is used throughout the Copyright Act to refer to the "subject matter" that the act is designed to protect: "original works of authorship." *See id.* § 3.06, at 3–34.23 ("The pre-existing work or works upon which a given derivative or collective work is based must be capable of copyright in the sense that it must constitute an original work of authorship within the meaning of Section 102.").

These statutory sections, read together,[9] and coupled with the fact that the term "derivative work" appears only in the

Copyright Act, and not, for example, in the patent or trademark statutes, indicate that for a work to qualify as a derivative work, the work from which it derives must itself be within the ambit of copyright.

We view the statute's meaning as plain on its face, but to the extent there is any ambiguity, the legislative history also confirms our reading of the Act. A House report accompanying the Copyright Act states that "[a] derivative work ... requires a process of recasting, transforming, or adapting one or more preexisting works; *the preexisting work must come within the general subject matter of copyright set forth in section 102, regardless of whether it is or was ever copyrighted.*" H.R. REP. NO. 94–1476, at 57 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5670 (emphasis added and internal quotations omitted). *See also* Phillip Edward Page, *The Works: Distinguishing Derivative Creations Under Copyright,* 5 CARDOZO ARTS & ENT. L.J. 415, 418 (1986) ("To be derivative, a work must be 'based upon' a preexisting work which could itself come within the general subject matter of copyright.").

We need only comment briefly on the district court's assertion that the bottle's trade dress—its blue color, gold label, etc.—renders the bottle a protected work. Although it is true that trade dress may arguably afford Skyy some intellectual property protection with regard to its bottle[10]—an issue we need not decide here—that protection is irrelevant to deciding whether the bottle is a preexisting work

---

(1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5670–71 ("Unlawfully employing preexisting copyrighted material"); S. Rep. No. 94–473, at 55 (1975) (SAME); *see also* 1 Nimmer § 3.06, at 3–34.26 & n.26.

**8.** By contrast, the "preexisting materials" that are the basis of a compilation "may or may not in themselves be capable of being protected by copyright." 1 Nimmer § 3.02, at 3–5.

**9.** *See generally United States v. Wells,* 519 U.S. 482, 490, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997) (stating that in interpreting statutes "the first criterion in the interpretive hierar-

chy [is] a natural reading of the full text."); *Stewart v. Abend,* 495 U.S. 207, 235, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (interpreting the Copyright Act by "read[ing] the plain language of [two different sections] together").

**10.** See, for example, the following cases addressing trade dress and trademark protection in bottles: *Paddington Corp. v. Attiki Importers & Distributors, Inc.,* 996 F.2d 577 (2d Cir.1993); *Faberge, Inc. v. Saxony Prods., Inc.,* 605 F.2d 426 (9th Cir.1979); *Carillon Importers Ltd. v. Frank Pesce Group, Inc.,* 913 F.Supp. 1559 (S.D.Fla.1996).

under the Copyright Act.[11] As noted above, this concept is one peculiar to the copyright law, and its scope must be defined within the contours of that law. The Copyright Act speaks to copyright, not trade dress, and its subject matter, as defined in section 102, is "original works of authorship."

### 2. The Bottle Is Not Copyrightable

■ Recognizing that the preexisting work must be copyrightable, we turn then to the so-called preexisting work—the Skyy vodka bottle. The district court treated the bottle as a whole as the underlying, "preexisting work," even though the bottle as a whole is a utilitarian object that cannot be copyrighted.

■ Under the Copyright Act, the design of a useful article, such as a bottle, is not protected unless the design includes features that exist separately from utilitarian ones:

> Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified. separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101. As Nimmer notes, "[a] work is a 'useful article,' and therefore denied copyright for its shape as such, if it has 'an intrinsic utilitarian function,' even though it may have other functions which are not utilitarian." 1 NIMMER § 2.08[B][3], at 2–97 (footnotes omitted).

In this case, the district court did not identify any artistic features of the bottle that are separable from its utilitarian ones. We also find none. Although it is "difficult [to] determin[e] when pictorial, graphic, or sculptural features 'can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article,'" *Id.* at 2–98, we conclude that the bottle has no "artistic features [that] can be identified separately and [that] are capable of existing independently as a work of art." *Fabrica*, 697 F.2d at 893.[12] The Skyy vodka bottle, although attractive, has no special design or other features that could exist independently as a work of art. It is essentially a functional bottle without a distinctive shape.

■ Turning next to the bottle's label, which the district court also cited in part in categorizing Ets–Hokin's photos as derivative works, we note that "[a] claim to copyright cannot be registered in a print or label consisting solely of trademark subject matter and lacking copyrightable matter." 37 C.F.R. § 202.10(b). Although a label's "graphical illustrations" are normally copyrightable,[13] "textual matter" is not-

---

11. Were we to hold, as the district court did, that the preexisting work must simply be "protectable" and that trade dress protection was sufficient to invoke the underlying, "preexisting work" requirement, it would only stand to reason that underlying works protected by trademarks and patents could also be the basis for derivative works. Following such a path, however, would be contrary to the Copyright Act and would disrupt divisions basic to intellectual property law. For good reason, the Supreme Court cautions against mixing the doctrines of trademark and copyright. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 439 & n. 19, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97–98, 39 S.Ct. 48, 63 L.Ed.

141 (1918); *Trade–Mark Cases*, 100 U.S. 82, 93–95, 25 L.Ed. 550 (1879).

12. See Lester Horwitz & Ethan Horwitz, 1 Intellectual Property Counseling and Litigation § 3.03[1][a], at 3–43 n.9 (1999), for additional examples of cases in which courts have found features to be separable-or inseparable-from the utilitarian features of an article.

13. *See* 1 Nimmer § 2.08[G][2], AT 2–136 & N.234.1. As to the requirement of originality, it bears noting that "there is some tendency to require a somewhat greater degree of originality in labels than in other works." 1 Nimmer § 2.08[G][3], at 2–140 & n.252 (citing several cases).

at least not unless the text "aid[s] or augment[s]" an accompanying graphical illustration. 1 NIMMER § 2.08[G][2], at 2–136.[14] The label on Skyy's vodka bottle consists only of text and does not include any pictorial illustrations.

We need not, however, decide whether the label is copyrightable because Ets–Hokin's product shots are based on *the bottle as a whole*, not on the label. The whole point of the shots was to capture the bottle in its entirety. The defendants have cited no case holding that a bottle of this nature may be copyrightable, and we are aware of none. Indeed, Skyy's position that photographs of everyday, functional, noncopyrightable objects are subject to analysis as derivative works would deprive both amateur and commercial photographers of their legitimate expectations of copyright protection. Because Ets–Ho-

kin's product shots are shots of the bottle as a whole-a useful article not subject to copyright protection-and not shots merely, or even mainly, of its label, we hold that the bottle does not qualify as a "preexisting work" within the meaning of the Copyright Act. As such, the photos Ets–Hokin took of the bottle cannot be derivative works.[15] The district court erred in so concluding.

## II. INFRINGEMENT

Having determined that Ets–Hokin's photos are copyrightable works, we move to the question of infringement. Ets–Hokin claims infringement with regard to Skyy's use of his product shots and with regard to solicitation and use of shots produced by other photographers who, Ets–Hokin contends, unlawfully mimicked his work.[16] This issue, which the district

14. Nimmer Explains:

> However categorized, certain copyright limitations on the protection available for such textual material should be observed. In *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, [266 F.2d 541 (2D CIR.1959)], The court expressly endorsed the following passage from [a] copyright office circular ... relating to commercial prints and labels: "Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed." This confirms an earlier trend discernible in the cases that such short phrases placed upon labels cannot claim copyright protection, at least if the textual matter does not aid or augment an accompanying pictorial illustration.

1 Nimmer § 2.08[G][2], at 2–136 (footnotes omitted). *See also Alberto–Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 710 (7th Cir.1972) (citing *Kitchens of Sara Lee* and holding that the phrase "most personal sort of deodorant" which appeared on the back of a deodorant spray can was not subject to copyright protection).

15. Throughout its briefing, Skyy relies heavily on a Seventh Circuit Case, *Gracen v. Bradford Exchange*, 698 F.2d 300 (7th Cir.1983), which involved a painting of a photograph of Judy Garland. *Gracen* is inapposite, however, because it involved a work based upon unquestionably copyrightable material, which this does not. It also bears noting that *Rock and*

*Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749 (6th Cir.1998), has no applicability here. Not only is it a trademark case but nowhere does the majority, or for that matter, the dissent, analyze the issue-relating to a museum's unique building design-under the copyright statute, let alone under the rubric of derivative copyright.

16. In his complaint, Ets–Hokin alleged both of these theories of infringement: (1) Skyy illegally used Ets–Hokin's work for various advertisements, including in *Deneuve* magazine, in the *San Francisco Examiner*, and on the side of a bus; and (2) Skyy used photographs taken by others that mimicked Ets–Hokin's photographs. Skyy argues on appeal that, based primarily on a brief parenthetical reference in summary judgment briefing, Ets–Hokin abandoned the first theory; Ets–Hokin argues on appeal that there was no abandonment. Reading the statement in context-namely as a response to Skyy's efforts to minimize the nature of the claims, along with other explicit statements arguing both infringement theories-and given that the district court did not reach the issue of infringement, we conclude that Ets–Hokin preserved both infringement theories.

The dissent suggests that there is no way that Ets–Hokin could prove infringement. Based on the record before us, we believe that this is an issue to be addressed in the first instance by the district court. For example, the district court has yet to address whether

**1082**

court did not reach in view of its holding that Ets–Hokin failed to establish the validity of his copyright, should be addressed in the first instance by that court. Although Ets–Hokin has won the battle of copyrightability, the winner of the infringement war has yet to be determined.

 We note that Skyy has invoked the doctrines of merger and scènes à faire. Under the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea. *See CDN Inc. v. Kapes,* 197 F.3d 1256, 1261 (9th Cir.1999). In such an instance, it is said that the work's idea and expression "merge." Under the related doctrine of scènes à faire, courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea;[17] like merger, the rationale is that there should be no monopoly on the underlying unprotectable idea. *See Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 489 (9th Cir. 1984); *See v. Durang,* 711 F.2d 141, 143 (9th Cir.1983) (per curiam). Although there is some disagreement among courts as to whether these two doctrines figure into the issue of copyrightability or are more properly defenses to infringement, *see Mason v. Montgomery Data, Inc.,* 967

there has been outright copying as alleged by Ets–Hokin.

17. Nimmer Explains:

[F]or example, if two scenarios wish to treat the unprotected idea of police life in the south bronx, for each it will be only natural to depict [certain stereotypical, stock scenes]. Judge Leon Yankwich has called such [scenes] "scènes à faire"—*i.e.,* "scenes which 'must' be done." that language is often invoked to immunize from liability similarity of incidents or plot that necessarily follows from a common theme or setting. Moreover, beyond mere "plot" incidents applicable to works of fiction, the scènes à faire doctrine can be invoked throughout other copyright contexts as well.

4 Nimmer § 13.03[B][4], at 13–72—13–73.

F.2d 135, 138 n. 5 (5th Cir.1992) (noting a split as to the doctrine of merger); 4 NIMMER § 13.03[B][3], at 13–69—13–70 & nn.164, 165 (same); *id.* at § 13.03[B][4], at 13–73 n.182 (noting a split as to the doctrine of scènes à faire), we hold that they are defenses to infringement. *Accord Kregos v. Associated Press,* 937 F.2d 700, 705 (2d Cir.1991) (holding that the merger doctrine relates to infringement, not copyrightability); *Reed–Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 914 (7th Cir.1996) (explaining why the doctrine of scènes à faire is separate from the validity of a copyright); *see also* 4 NIMMER §§ 13.03[B][3], at 13–69—13–70, 13.03[B][4], at 13–73. Accordingly, these defenses should be addressed in the first instance by the district court in the context of the infringement claims.

REVERSED AND REMANDED.

D.W. NELSON, dissenting:

The majority opinion errs in reversing the district court's summary judgment order because there is no way that Ets–Hokin can prove infringement given the low standard of originality for photographs. I agree with the majority opinion that under this standard that Ets–Hokin's photographs are original. By the same token, however, so are the other allegedly infringing photographs of Skyy's vodka bottle.[1] These subsequent photographs

1. Although it may be Ets–Hokin's best argument, this is not a licensing case about the unauthorized use of Ets–Hokin's photographs. *See Mendler v. Winterland Prod.,* 207 F.3d 1119 (9th Cir.2000). The district court made an unambiguous factual finding (which we review for clear error) that Ets–Hokin abandoned his claims about the unauthorized use of his photographs in advertisements. Nor does Ets–Hokin attempt to rebut the district court's finding of abandonment in his appellate briefs. The majority opinion attempts to ignore the district court's factual findings and the lack of argument by Ets–Hokin on this issue. Nonetheless, the only remaining issue in this case is whether the subsequent photographs of Skyy's bottle infringe on Ets–Hokin's copyright. As a matter of law, there cannot be infringement because of the low standard of originality.

are based on slightly different angles, different shadows, and different highlights of the bottle's gold label. Thus, even if the district court had applied the proper standard of originality, Ets–Hokin's lawsuit would not have survived summary judgment because the subsequent photographs also possess originality.[2] Furthermore, as a matter of law, legal defenses such as scènes à faire and the merger doctrine prevent Ets–Hokin from prevailing on his copyright infringement claims.

I also agree with the majority opinion that the district court erred by basing its summary judgment order solely on a derivative works analysis. The majority opinion, however, fails to acknowledge that it is a much closer question (and a question that lacks clear statutory or judicial authority) whether a photograph of a vodka bottle can be subject to derivative works analysis. A derivative work is defined as "a work based upon one or more preexisting works such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Although we have recognized that the statutory definition of a derivative work is "hopelessly over broad," *see Micro Star v. Formgen, Inc.,* 154 F.3d 1107, 1110 (9th Cir.1998), the definition is limited by additional non-statutory requirements. *Micro Star* recognized that a derivative work "must substantially incorporate *protected* material from the preexisting work." *See id.* (citing *Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir. 1984)) (emphasis added).

It is not clear from the plain meaning of the copyright statute that a preexisting work must be copyrighted or whether the underlying work merely must be protecta-

ble. The majority opinion relies on inferences in the copyright statute and absence of references to derivative works in the trademark and patent statutes. The opinion's only other authority is based on selective quotations from Nimmer's treatise. *See, e.g., Micro Star,* 154 F.3d at 1112 (quoting *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.,* 856 F.2d 1341, 1343 (1988) (quoting 1 Nimmer on Copyright § 3.01 (1986 ed.))) (" ' "A work will be considered a derivative work only if it would be considered an infringing work if the material which it has derived from a preexisting work has been taken without the consent of a copyright proprietor of such preexisting work." ' ").

Yet neither the majority opinion nor Ets–Hokin cites any cases that say preexisting works protected by trade dress and trademarks cannot be protected from derivative works. *But see Theotokatos v. Sara Lee Personal Prods.,* 971 F.Supp. 332, 338 (N.D.Ill.1997) (finding a derivative work based on preexisting logos and trademarks); *Moore Publishing, Inc. v. Big Sky Mktg., Inc.,* 756 F.Supp. 1371, 1375 (D.Idaho 1990) (finding a derivative work based on logos). Although in a dissent to a case about unlicensed photographs of Cleveland's Rock and Roll Hall of Fame, Chief Judge Boyce Martin assumed for the purposes of his argument that a photograph of a Coke bottle was a derivative work:

When a Coke bottle is photographed it loses a dimension, but the subject of the picture remains recognizable as one of a trademarked, three-dimensional figure. If a photograph of a trademark—for example, one of the Coke bottle—can be sold by the owner of the trademark in a poster form, that poster naturally must

---

**2.** We have recognized two exceptions to this broad rule of originality: (1) a photograph of a copyrighted photograph; and (2) a photograph that duplicated every single element of a copyrighted photograph. *See Los Angeles News Serv. v. Tullo,* 973 F.2d 791, 794 n. 2 (9th Cir.1992) (citing *Nimmer on Copyright,*

§ 2.08[E][1], at 2–126.3–2.126.7 (1992 ed.)). Neither of these exceptions applies to this case. Given the different angles, shadows, and highlights of the subsequent photographs, they are not virtually identical and therefore do not infringe on Ets–Hokin's photographs.

be recognized as one of the owner's "goods", albeit a derivative good.

*Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 757 (6th Cir.1998) (Martin, C.J., dissenting). Martin's analysis mirrors the analysis in this case and in derivative works cases in other circuits.[3] Suffice to say, in order to trigger a derivative works analysis, some aspect of the preexisting work must be protected, either by copyright or by trademark and trade dress.

The flaw in the majority opinion's derivative works analysis is that it consistently understates the protected elements of Skyy's vodka bottle, beginning with the opinion's attempt to reproduce Skyy's label in the statement of facts. The opinion's rough, non-scale, black-and-white depiction ignores the way Skyy's gold label contrasts with its electric blue bottle. Vodka bottles are often the subject of highly-competitive print advertising campaigns. For example, Absolut Vodka is famous for its clever ads featuring its bottle. The majority opinion overlooks the Skyy bottle's copyrightable elements—its non-utilitarian features (such as the color and shape of the bottle) and its label. Furthermore, the bottle and label also are subject to trademark and trade dress protection. If derivative works analysis is limited solely to copyrighted works (as opposed to works protected by trademark and trade dress), it is up to Congress, not the Ninth Circuit, to say so. As it currently stands, derivative works analysis may be another means of preventing Ets–Hokin from obtaining a monopoly over product shots of Skyy's bottle.

The district court should not have dismissed this case solely based on a deriva-tive works analysis because this case could have been dismissed on firmer legal grounds—the originality of the allegedly infringing photographs and the merger doctrine. The majority opinion, however, compounds the district court's error with a blanket rejection of a derivative works analysis in this case. Thus, I would affirm the district court's summary judgment order, albeit on slightly different grounds. I respectfully dissent.

---

**3.** The majority's attempt to distinguish Judge Posner's decision in *Gracen v. Bradford Exch.*, 698 F.2d 300 (7th Cir.1983)—because *Gracen* is a derivative works case based on a "unquestionably" copyrighted work—is unpersuasive. *Gracen*, 698 F.2d at 302 (finding a painting copied from still-life photographs of Dorothy from the movie "The Wizard of Oz" to be a derivative work) appears to be on point with this case, especially given that the Skyy bottle's label and non-utilitarian features are copyrightable. Nor does the majority opinion specifically address Chief Judge Martin's coke bottle analogy in *Rock and Roll Hall of Fame and Museum*. Together, *Gracen* and the coke bottle analogy suggest that a derivative works analysis may be appropriate in this case, though not as a means of granting summary judgment.