**Randy HAROD and Robert N. Lafemina, Plaintiffs,**

v.

**SAGE PRODUCTS, INC., Defendant.**

**No. CV100–148.**

United States District Court, S.D. Georgia, Augusta Division.

Feb. 6, 2002.

Percy J. Blount, Glover, Blount and Millians, Augusta, GA, A. Rowland Dye, Waynesboro, GA, for Plaintiffs.

Wm. Byrd Warlick, Warlick, Tritt & Stebbins, Augusta, GA, Helen Hill Minsker, Brian E. Banner, Banner & Witcoff, Ltd., Washington, DC, Mark T. Banner, Joseph J. Berghammer, Banner & Witcoff, Ltd., William T. Cahill, Cahill, Christian & Kunkle, Ltd., Chicago, IL, for Defendant.

## ORDER

BOWEN, District Judge.

Before the Court are cross-motions for summary judgment. The issue is who used a trademark first. For the following reasons, Defendant's motion is **GRANTED**, and Plaintiffs' motion is **DENIED**.

### I. Background

Plaintiffs and Defendant are competing for the rights to use the trademark "Comfort Bath." The parties manufacture disposable wipes used to bathe elderly or infirm patients. Plaintiffs are two individuals participating in a joint venture. Plaintiff Harod lives in Martinez, Georgia. (Harod Aff. ¶ 2, Doc. No. 18.) Plaintiff LaFemina lives in Orlando, Florida. (Id. ¶ 3.) Defendant is an Illinois corporation.

### A. Plaintiffs' Use of "Comfort Bath"

Before 1996, Plaintiff Harod's corporation developed a process for manufacturing "disposable pre-moistened wipes" that elderly or infirm people can use to cleanse themselves without using a shower or bathtub. (Harod Aff. ¶ 4, attached to Doc. No. 45.) Plaintiffs then joined forces; Plaintiff Harod was to manufacture the product, and Plaintiff LaFemina would market it. (Id. ¶ 5.)

The point in time Plaintiffs first conceived the name "Comfort Bath" is disputed. According to Plaintiff Harod, he searched online as early as May 1996 to determine whether the Department of Commerce had issued a trademark for the name "Comfort Bath." (Id. ¶ 7.) He allegedly found no prior registration at that time. (Id.) Plaintiff Harod then ordered approximately 450 "Comfort Bath" labels from a local printer. (Id.; Ex. D to Doc. No. 45.) The printer invoiced the labels on May 20, 1996. (Ex. D to Doc. No. 45.) The printer adapted the "Comfort Bath" labels from a label design from an earlier product called "Easy Wash." (Nov. 10 Harod Dep. at 10, Doc. No. 71.)

Plaintiffs allegedly manufactured samples of the "Comfort Bath" product on May 24, 1996. (Harod Aff. ¶ 8, attached to Doc. No. 45.) That summer, Plaintiff Harod reportedly sent samples to various people in various places. According to Plaintiff Harod, he sent a sample case to a company in Spartanburg, South Carolina. (Id. ¶ 9.) On June 26, 1996, he sent a sample case to Plaintiff LaFemina in North Carolina and to his sister-in-law, Sculla Conrad ("Conrad"). (Id. ¶ 10.) According to Plaintiff Harod, his sister-in-law had contacts at Kaiser Hospital, and he intended for her to develop sales of Plaintiffs' "Comfort Bath" product in California. (Harod Aff. ¶ 3, attached to Doc. No. 61.) Plaintiff Harod claims that on July 12,

1996, Conrad purchased two cases, which were shipped to her on September 13, 1996. (*Id.*) Plaintiff Harod avers that on July 11, 1996, he sent samples to other potential distributors in Atlanta and West Columbia, South Carolina. (*Id.* ¶¶ 6–7.) In the following months, Plaintiff Harod allegedly shipped samples to other possible distributors in Florida and North Carolina. (*Id.* ¶¶ 9–11.)

Plaintiffs eventually registered the trademark "Comfort Bath." (Ex. A to Harod Aff., attached to Doc. No. 45.) Plaintiffs agreed to share ownership of the mark. (LaFemina Dep. at 17–18.) A trademark search was conducted in December 1996, and a third-party conducted a manual search in January 1997. (Harod Aff. ¶ 18, attached to Doc. No. 45.) These searches disclosed no prior registration. (*Id.*)

On March 10, 1997, Plaintiff Harod received a facsimile transmission showing that Defendant had labeled a similar product "Comfort Bath." (*Id.* ¶ 19.) It featured no "TM" designation. (*Id.* ¶ 21.) According to Plaintiff Harod, he tried to find out whether Defendant was selling a product called "Comfort Bath." (*Id.*) Because he thought Plaintiff LaFemina had already filed the trademark application, Plaintiff Harod did not bring this discovery to Plaintiff LaFemina's attention. (*Id.*) On or around March 19, 1997, Plaintiff LaFemina filed a trademark application with the United States Patent and Trademark Office. (*Id.* ¶ 18.) Plaintiff Harod received a package of Defendant's "Comfort Bath" product on March 27, 1997. (*Id.* ¶ 21.) The United States Patent and Trademark Office registered the mark "Comfort Bath" in Plaintiff LaFemina's name on March 31, 1998. (Ex. A to Harod Aff., attached to Doc. No. 45.)

### B. Defendant's Use of "Comfort Bath"

According to Defendant, it began developing prototypes of its bathing system in 1994. (Skiba Dep. at 6, filed with Doc. No. 62.) The "Product Development" department—which launches but does not necessarily sell the product—scheduled a "test sale" at a nursing home in Ionia, Michigan for June 24, 1996. (*Id.* at 34; *see* Skiba Dep. at 10, Doc. No. 50.) At the time, the bathing product was called "Comfort Care." (Simon Dep. at 6, filed with Doc. No. 62.) Defendant learned that another company was marketing shampoo under the name "Comfort Care." (Skiba Dep. at 16, Doc. No. 50.) In June 1996, Defendant's director of Corporate Marketing and Communications recommended changing the name to "Comfort Bath." (Affinito Dep. at 8, 12–13, filed with Doc. No. 62.) A trademark search allegedly showed it was available. (*Id.* at 14.)

Samples of the bathing system bore professionally produced "Comfort Care" labels. (Simon Dep. at 10, filed with Doc. No. 62.) When the product name changed, an employee of Defendant produced "Comfort Bath" labels on a photocopier, laminated them, and taped the new "Comfort Bath" labels on the samples. (*Id.* at 11.) Defendant claims that it shipped eight cases of "Comfort Bath" samples to a nursing home in Michigan on June 20, 1996. (*Id.* at 15; Skiba Dep. at 39–40, filed with Doc. No. 62.)

Two of Defendant's employees drove to the Michigan nursing home on June 24, 1996. (Ogle Dep. at 7–8, filed with Doc. No. 62.) They set up a display cart, a microwave, and advertising posters. (Skiba Dep. at 38, filed with Doc. No. 62.) One of them characterized this visit as a form of marketing by "setting up a trial for purchase." (Ogle Dep. at 7, filed with Doc. No. 62.) The other testified that they arranged for a trial of Comfort Bath and

they "had a designated spot in the beauty shop." (Skiba Dep. at 44–45, filed with Doc. No. 62.) A third characterized it as a "field evaluation." (Young Dep. at 9, filed with Doc. No. 62.) This "trial run" lasted until August 1996, when they returned to "wrap it up." (Skiba Dep. at 47, filed with Doc. No. 62.) At this point, according to one employee, "there wasn't any launched product at that point in time. We were still in product development at that point in time. It wasn't a sales and marketing item." (Young Dep. at 47, filed with Doc. No. 62.)

According to Defendant, the trial run met with approval from the nurses surveyed. (*Id.* at 14–15.) The nursing home corporation included the "Comfort Bath" product on its list of products used and invited Defendant to present its "Comfort Bath" product at a national nursing convention in Toledo, Ohio. (*Id.* at 15.) Defendant allegedly shipped approximately ten cases to Toledo in preparation for this convention. (*Id.* at 45–46.) Defendant presented its product and gave away samples. (Young Decl. ¶ 2, filed under seal on June 8.)

Defendant then reportedly began selling its "Comfort Bath" product through a nationwide telemarketer. This telemarketing firm marketed various products made by Defendant. (Howes Dep. at 10, attached as Def.'s Ex. I and filed under seal on June 8.) In October and November of 1996, Defendant allegedly shipped samples to fifty-seven customers in twenty-two states. (Naponelli Decl. ¶ 3, attached as Def.'s Ex. F and filed under seal on June 8.) Around October 1996, Defendant allegedly sold a "sizeable" quantity of its "Comfort Bath" product to a nursing home in Virginia or West Virginia. (Layer Dep. at 32–33, attached as Def.'s Ex. K and filed under seal on June 8.)

According to Defendant, its own sales force began to hawk its "Comfort Bath" product. In November 1996, Defendant shipped "Comfort Bath" to "a few of [its] direct sales representatives for them to present to customers in their territories." (Layer Decl. ¶ 2, filed under seal on June 8.)

### C. Procedural History

On April 29, 1998, Defendant filed a Petition for Cancellation with the Trademark Trial and Appeal Board ("the TTAB"). Plaintiffs filed the captioned case in the Southern District of Georgia on August 2, 2000. Plaintiffs' Complaint advances statutory and common law claims for trademark infringement and unfair competition claims under state and federal law. Defendant filed an Answer on October 2, 2000. Defendant also asserted counterclaims to cancel Plaintiffs' trademark registration, common law trademark infringement, unfair competition, and false trademark registration.

Plaintiffs then moved the TTAB to suspend its proceedings. The TTAB denied this motion on October 24, 2000. Defendant filed a civil action in the Northern District of Illinois. The Order of December 6, 2000 (Doc. No. 27) denied Defendant's motion to transfer venue. The parties have not reported on the status of either the TTAB proceeding or the case in the Northern District of Illinois.

The parties filed cross-motions for summary judgment. The parties' filings do not specifically refer to the claims advanced in their pleadings. The parties primarily argue over who used the mark "Comfort Bath" first.

## II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are

"material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus*, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. *Clark*, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick*, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

The Clerk has given the parties notice of the summary judgment motions and the summary judgment rules, of the right to file affidavits or other materials in opposi-

tion, and of the consequences of default. (Doc. Nos. 51, 67.) Therefore, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir.1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motions are ripe for consideration.

### III. Analysis

■ The United States Patent and Trademark Office registered the mark "Comfort Bath" in Plaintiff LaFemina's name on March 31, 1998. (Ex. A to Harod Aff., attached to Doc. No. 45.) The certificate issued is prima facie evidence that Plaintiff LaFemina owns the mark and has the right to use it throughout the United States. 15 U.S.C. § 1057(b); *Coach House Rest. v. Coach and Six Rest.,* 934 F.2d 1551, 1562 (11th Cir.1991). Thus, if a junior user appropriates the mark in the same geographic area in which the registrant uses the mark, the registrant may be entitled to relief, provided that he has superior ownership rights. *See generally John R. Thompson Co. v. Holloway,* 366 F.2d 108, 114–16 (5th Cir.1966) (explaining the geographic extent of trademark rights); *American Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619, 625–26 (5th Cir. 1963)(same). Also, a registrant with superior rights can enjoin use of the mark in other geographic areas if he decides to expand his business into those areas. *Coach House Rest.,* 934 F.2d at 1562.

■ Registration does not actually confer ownership rights in the mark. Instead, trademark ownership accrues with use. *Bauer Lamp Co. v. Shaffer,* 941 F.2d 1165, 1171 (11th Cir.1991). Trademark registration confers only procedural advantages and does not enlarge the registrant's ownership rights. *Turner v. HMH Pub. Co.,* 380 F.2d 224, 228 (5th Cir.1967). Spe-

cifically, Plaintiffs' prior registration gives rise to a presumption of validity. *Coach House Rest.,* 934 F.2d at 1562. This presumption is rebuttable. *The Vision Ctr. v. Opticks, Inc.,* 596 F.2d 111, 119 (5th Cir. 1979).

■ Defendant can rebut this presumption of validity and obtain cancellation of the registration by showing it was the prior user. *Coach House Rest.,* 934 F.2d at 1558. Defendant must establish prior use by a preponderance of the evidence. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 146 F.3d 983, 990 (D.C.Cir. 1998); *Midwest Plastic Fabricators, Inc. v. Underwriters Lab., Inc.,* 906 F.2d 1568, 1570–71 (Fed.Cir.1990); *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 938 (7th Cir. 1989). At issue is which party first used the mark in interstate commerce.[1]

### A. The Parties' Claims for Relief

■ Plaintiffs have advanced unfair competition and trademark infringement claims. "As a general rule ... the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1010 (5th Cir.1975). To succeed on any of their theories of recovery, Plaintiffs must show they have a valid trademark which predates Defendant's use of the mark. *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1216–17 (11th Cir.2000).[2] Conversely, Defendant can defeat Plaintiffs' summary judgment motion with evidence that it used "Comfort Bath" in interstate commerce before Plaintiffs used it.

Defendant seeks summary judgment on all of Plaintiffs' claims. Defendant has

---

1. See Appendix A for a timeline of relevant events.

2. Any state law or common law claims are substantially similar. *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1512 n. 3 (11th Cir.1984).

also asserted counterclaims to cancel Plaintiffs' trademark registration, common law trademark infringement, unfair competition, and false trademark registration. To obtain cancellation of Plaintiffs' registration, Defendant must show standing and a valid ground for cancelling the registration. *Coach House Rest.,* 934 F.2d at 1557. To succeed on its claims for unfair competition and trademark infringement, Defendant must show that it has superior rights to the mark. *Leigh,* 212 F.3d at 1216–17. Thus, all the claims in the case turn on the same issue—priority of use.

## B. Who Used the Mark First

Viewed in a light most favorable to Plaintiffs, the evidence shows that Defendant first used the mark in commerce in October 1996. Defendant shipped samples to various customers around the country as evidenced by invoices dated October 28, 1996. (Attachments to Naponelli Decl., filed under seal on June 8.) According to Defendant's Chief Financial Officer, these samples bore the mark "Comfort Bath." (Naponelli Decl. ¶ 2, filed under seal on June 8.) In the following month, Defendant shipped samples to fifty-seven potential customers in twenty-two states. (*Id.* ¶ 3.) Around the "October time frame," Defendant sold a "sizeable" quantity of "Comfort Bath" to a nursing home in Virginia or West Virginia. (Layer Dep. at 32–33, attached as Def.'s Ex. K and filed under seal on June 8.)

Plaintiffs do not dispute these facts. Even if these shipments were only samples and not sales, "sales to customers are not the *sine qua non* of trademark use." *Blue Bell, Inc. v. Farah Mfg. Co.,* 508 F.2d 1260, 1267 (5th Cir.1975). At issue is when the public first associated the name "Comfort Bath" with Defendant's product. *Id.* Furthermore, on page eleven of their summary judgment brief (Doc. No. 46), Plaintiffs concede that Defendant first used the mark no later than October 1996.

Plaintiffs make two arguments that they have superior rights to the mark. First, Plaintiffs argue that they used the mark before October 1996. Second, Plaintiffs assert that Defendant is estopped because it failed to object to Plaintiffs' registration application.

### 1. Whether Plaintiffs Used the Mark Before October 1996

To overcome Defendant's summary judgment motion, Plaintiffs must show they used the "Comfort Bath" mark in commerce before October 1996. A mark is in use in commerce when

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto; or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in interstate commerce.

15 U.S.C. § 1127. Plaintiffs must refer to a "bona fide use ... and not merely [use] made to reserve a right in the mark." *Id.* A putative trademark owner uses a mark in commerce if he uses it a manner "*sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind.*" *Blue Bell,* 508 F.2d at 1266 (quoting *New England Duplicating Co. v. Mendes,* 190 F.2d 415, 418 (1st Cir.1951)). A shipment is not sufficiently public unless it is delivered to the relevant class of purchasers. *Id.* at 1265–66.

Plaintiff Harod allegedly shipped "Comfort Bath" samples to:

1) a Spartanburg, South Carolina company called Isomedix for the purpose of sterilization on June 6, 1996;

2) Sculla Conrad—his sister-in-law and a putative distributor—on June 26, 1996;

3) Plaintiff LaFemina in North Carolina on June 26, 1996;

4) an Atlanta distributor called Global Health Care on July 11, 1996;

5) a South Carolina distributor named Russell Raddatz on July 11, 1996; and

6) a Florida distributor named Bill Huggins on August 23, 1996 and again on October 11, 1996.

(Harod Aff. ¶¶ 9–11, 13, 15, attached to Doc. No. 45.) Plaintiff Harod claims that in July and September, he sold two cases of Comfort Bath to Conrad for her to resell as a distributor. (*Id.* ¶ 12, 14.) There are three problems with Plaintiffs' attempts to establish prior use.

▆▆▆ First, none of these shipments exposed the mark to the relevant class of consumers. In *Blue Bell, Inc.*, the former Fifth Circuit observed that "[t]he primary, perhaps singular purpose of a trademark is to provide a means for the *consumer* to separate or distinguish one manufacturer's goods from those of another." 508 F.2d at 1265. Thus, under common law trademark principles, "[s]ecret, undisclosed internal shipments are generally inadequate to support the denomination 'use.'" *Id.* The court held that intra-corporate sales to twelve regional managers did not constitute use of a trademark in interstate commerce, even though the managers subsequently showed the goods to customers. *Id.*

▆▆▆ The shipment to Isomedix for the purpose of sterilizing the samples was not a use of the mark in commerce. A company which receives goods as part of the manufacturing process is not among the relevant class of consumers. Likewise, neither the shipment to Plaintiff LaFemina, *Avakoff v. Southern Pac. Co.*, 765 F.2d 1097, 1098 (Fed.Cir.1985), nor the shipments to the potential distributors in South Carolina, Atlanta, and Florida were shipments to consumers. Even the purported sales to Conrad did not establish any rights in the mark. *Id.*

The second problem with Plaintiff's position is that when Plaintiff LaFemina applied to register the mark, he identified November 12, 1996 as his first use of the mark in commerce. (Ex. A to Harod Aff., attached to Doc. No. 45.) Plaintiffs are not bound by this date. *Elder Mfg. Co. v. Int'l Shoe Co.*, 39 C.C.P.A. 817, 194 F.2d 114, 118 (Cust. & Pat.App.1952). Plaintiffs, however, must establish an earlier date by clear and convincing evidence. *Id.; see also Martahus v. Video Duplication Serv., Inc.*, 3 F.3d 417, 423 n. 7 (Fed. Cir.1993); *Hydro–Dynamics, Inc. v. George Putnam & Co.*, 811 F.2d 1470, 1473 (Fed.Cir.1987). "Such testimony should not be characterized by contradictions, inconsistencies, and indefiniteness, but should carry with it conviction of its accuracy and applicability." *Elder*, 194 F.2d at 118.

On July 15, 1996, Plaintiff LaFemina wrote Plaintiff Harod:

... the golf was great and I think we accomplished a great deal.

Considering your possible entrance into QVC with Easy Wash and your current problems with your partners. I [feel] that your investment should be protected as we discussed I think we should market a product similar to Easy Wash but under a different name but not in direct competition with Easy Wash and under a different distribution system this way everyone is protected....

Let me know what you think of the names Eppi Care or Comfort Bath. I prefer the name Comfort Bath because of the soothing and non caustic cleaning qualities of our ingredients.

Kick these ideas over and [let's] work out some more ideas.

(Letter attached as Ex. R to Def.'s June 8 filing.) This evidence does not wholly contradict Plaintiff Harod's claim that he ordered "Comfort Bath" artwork in May 1996. (*See* Harod Aff. ¶ 7, attached to Doc. No. 45.) It does, however, permit an inference that Plaintiffs had not finally decided to name their product "Comfort Bath." This inference is noteworthy because Plaintiff Harod does not specifically aver in his affidavit that he attached "Comfort Bath" labels to the summer 1996 shipments. Instead, he says merely that he shipped sample cases of "Comfort Bath." (*See, e.g., id.* ¶¶ 9–15.) Plaintiffs need to show they affixed "Comfort Bath" labels to the product samples. *Blue Bell,* 508 F.2d at 1267. Plaintiff Harod's affidavit permits this inference, but it does not establish prior use by clear and convincing evidence.

The third problem with Plaintiffs' position is that their use of the "Comfort Bath" was merely sporadic. Even a single use of the mark could establish trademark rights if followed by continuous use in commerce. *Id.* at 1265. The fact that a business is small and its trade immodest does not necessarily preclude the acquisition of trademark rights. *Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.,* 486 F.2d 114, 123 (5th Cir.1973). The use of the mark may, however, be "so transitory, spasmodic, and inconsiderable as not to vest title in the user." *Id.* (quoting *Worden v. Cannaliato,* 285 F. 988, 990 (D.C.Cir.1923)). In 1996, Plaintiffs "sold" $70 worth of "Comfort Bath" to Plaintiff Harod's sister-in-law in California, intending for her to resell it as a distributor. (Harod Aff. ¶ 12, attached to Doc. No. 45.) Plaintiffs made no sales of "Comfort Bath" after March 20, 1997 or before 2000. (Pls.' Ans. to Def.'s Interrogs. ¶¶ 2, 5, attached

as Ex. 37 to Harod Dep., Doc. No. 75.) Plaintiffs then reportedly made sales of only $75 in 2000 and $60 in 2001. (*Id.;* Harod Dep. at 215–16, Doc. No. 75.) Aside from sending samples to potential distributors, Plaintiffs never advertised their "Comfort Bath" product. (Harod Dep. at 216, Doc. No. 75.) Plaintiffs' use of the "Comfort Bath," mark, such as it was, amounts to no more than "transitory, spasmodic, and inconsiderable" use and does not establish trademark rights. *E.g.,Sheila's Shine,* 486 F.2d at 124 (dismissing "sporadic and occasional mail order sales"); *see also Teddygram, Inc. v. Boyce,* 53 U.S.P.Q.2d 1804, 1809 (N.D.Ga. 1999) (dismissing as insubstantial sales of one teddy bear in Maine, one in New Hampshire, one in Delaware, six in Connecticut, and sixteen in Massachusetts); *Inmuno Vital, Inc. v. Golden Sun, Inc.,* 49 F.Supp.2d 1344, 1353 (S.D.Fla.1997) (dismissing as de minimis sales of 20 bottles in Illinois, 16 bottles in New Jersey, 124 bottles in Florida, and 648 bottles in Texas). The law cannot award Plaintiffs property rights in a mark they have scarcely used where Defendant has put the mark to good use.

### 2. Whether Defendant is Estopped

Plaintiffs argue that Defendant is estopped from claiming rights in the mark for two reasons. First, Plaintiffs observe that Defendant did not object to the application to register the trademark in Plaintiff LaFemina's name. Second, Plaintiffs complain that Defendant knew about but duplicitously failed to apprise the United States Patent and Trademark Office of Plaintiffs' claim to ownership of the mark when Defendant applied to register the mark.

To establish equitable estoppel,[3] Plaintiffs must show:

---

**3.** Plaintiffs' defense is arguably better characterized as a defense based on laches. To

establish this defense, Plaintiffs must show

(1) misleading words, conduct, or silence;

(2) reliance; and

(3) material prejudice.

*Lincoln Logs, Ltd. v. Lincoln Pre–Cut Log Homes,* 971 F.2d 732, 734 (Fed.Cir. 1992); *see also Tefel v. Reno,* 180 F.3d 1286, 1302 (11th Cir.1999) (reciting the elements of estoppel in a challenge to deportation rules). Plaintiffs do not refer to any evidence establishing the elements of this defense. Plaintiffs argue only that Defendant failed to object to Plaintiffs' application even though it knew Plaintiffs claimed ownership of the mark. Defendant correctly points out that 15 U.S.C. § 1064 allows objectors to petition for cancellation of a registration even after the Patent and Trademark Office has registered a mark.

 On page fifteen of their response brief (Doc. No. 61), Plaintiffs also complain that Defendant filed a trademark registration and fraudulently failed to disclose Plaintiffs' competing claims to the mark. Plaintiffs must show that Defendant made a false and material statement of fact that would have justified denial of the registration if the truth had been known. *Citibank, N.A. v. Citibanc Group, Inc.,* 724 F.2d 1540, 1544 (11th Cir.1984). An applicant must certify only that to the best of his knowledge and belief, no other person has the *right* to use the mark. 15 U.S.C. § 1051(a)(3)(D); *see San Juan Prod., Inc. v. San Juan Pools of Kan., Inc.,* 849 F.2d 468, 472–73 (10th Cir.1988) (holding that only a good faith belief is necessary). The application must also state whether anyone else is using the mark. 15 U.S.C. § 1501(a)(3)(D)(ii)(I).

Defendant filed its application on June 12, 1997. (Ex. B to Doc. No. 47.) Defendant did not indicate on the application that anyone else was using the mark "Comfort Bath." According to Defendant, its attorney asked Plaintiffs for evidence of their ownership rights and received no reply. (Affinito Dep. at 78–84, filed with Doc. No. 62.) Plaintiffs have never rebutted this assertion. Plaintiffs have failed to show sufficient evidence of fraud.

### C. Further Proceedings

Plaintiffs registered the trademark "Comfort Bath." Plaintiffs, however, failed to make significant use of the mark, and the law does not permit them to waste their rights in this mark where Defendant can and has put the mark to productive use. There is no genuine issue of material fact on the question of prior use. Defendant is therefore entitled to partial summary judgment that it used the mark "Comfort Bath" in interstate commerce before Plaintiffs did. To this extent, Defendant's motion for partial summary judgment is **GRANTED.**

Defendant has asked for a partial summary judgment that its rights to mark "Comfort Bath" are superior and for the cancellation of Plaintiffs' registration. The other claims in the parties' pleadings are still before the Court. By the close of business on Monday, March 4, 2002, Defendant shall brief the Court on the remedies available and on the proceedings necessary to reduce the parties' claims to judgment. Plaintiffs shall then have until the close of business on Monday, March 25, 2002 to respond.

### IV. Conclusion

Defendant's Motion for Partial Summary Judgment (Doc. No. 52) is **GRANTED.** Plaintiffs' Motion for Summary Judgment (Doc. No. 45) is **DENIED.**

---

that Defendant inexcusably delayed asserting its rights and prejudiced Plaintiffs as a result. *Kason Indus., Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199, 1203 (11th Cir. 1997).

## APPENDIX A[4]

May 1996 Plaintiff Harod allegedly researched online for trademark name "Comfort Bath"

May 20, 1996 Printer invoiced "Comfort Bath" labels for Plaintiffs

May 24, 1996 Plaintiffs allegedly manufactured samples of "Comfort Bath"

June 1996 One of Defendant's directors suggested changing product name from "Comfort Care" to "Comfort Bath"

June 20, 1996 Defendant shipped cases to Michigan for test sale

June 24, 1996 Defendant held test sale of product named "Comfort Care" at nursing home in Michigan

June 26, 1996 Plaintiff Harod sent cases of "Comfort Bath" to his sister-in-law and Plaintiff LaFemina

July 11, 1996 Plaintiff Harod sent samples to potential distributors in Atlanta and West Columbia

July 12, 1996 Plaintiff Harod's sister-in-law bought two cases

October 1996 Defendant sold "Comfort Bath" to nursing home in Virginia or West Virginia

October 28, 1996 Defendant shipped samples to various customers around the country

November 1996 Defendant continued to ship samples of "Comfort Bath" reaching 57 customers in 22 states. Defendant also shipped "Comfort Bath" to its sales representatives.

December 1996 Plaintiffs conducted trademark search

January 1997 Third party conducted trademark search for Plaintiffs

4. If specific date is not shown, it was not alleged by the parties.

March 10, 1997 Plaintiff Harod received fax showing that Defendant was using "Comfort Bath" label

March 19, 1997 Plaintiff LaFemina filed trademark application

March 27, 1997 Plaintiff Harod received package of Defendant's "Comfort Bath"

June 12, 1997 Defendant filed trademark application

March 31, 1998 Trademark "Comfort Bath" registered in Plaintiff LaFemina's name