296 Ga. 668
FINAL COPY

S14A1824.  INDIA-AMERICAN CULTURAL ASSOCIATION, INC.
v. iLINK PROFESSIONALS, INC.

HINES, Presiding Justice.

This is an appeal by defendant India-American Cultural Association, Inc. ("IACA") from the grant of plaintiff iLink Professionals, Inc.'s ("iLink") emergency motion for an interlocutory injunction in its suit alleging, inter alia, the infringement of state registered service marks. For the reasons that follow, we affirm.

This dispute concerns the use of the service marks, "Miss India Georgia" and "Miss Teen India Georgia," (collectively "Marks"). The Marks are used in connection with beauty pageants, initially hosted in 1987 by  IACA, a nonprofit organization focused on supporting Indian-Americans and preserving Indian culture.  IACA conducted the pageants under the Marks from 1987 through 2010. In 2011, facing budgetary restrictions, IACA decided not to hold the "Miss India Georgia" and "Miss Teen India Georgia" pageants.  In 2012, iLink, a promoter of beauty pageants and whose president had been involved in the "Miss India Georgia" and "Miss Teen India Georgia" pageants in the past,

promoted and hosted both pageants, and IACA appeared in the pageants'

program as a sponsor.  After iLink announced its intention to host the 2013

pageants, and its scheduled date of July 20, 2013, IACA announced that it

would hold the "Miss India-Georgia" and "Miss Teen India-Georgia" pageants

the week before, on July 13, 2013.   Both parties promoted their events and

sought sponsorships.

On April 12, 2013, iLink filed, with the Office of the Secretary of State

of Georgia, the mark "Miss India Georgia," and then on April 16, 2013, filed

with that office the mark, "Miss Teen India Georgia." iLink also acquired an

Internet domain name and used that website to advertise its pageant business.

 iLink sent IACA a letter dated May 20, 2013, demanding that IACA cease use

of  "Miss India Georgia" and "Miss Teen India Georgia."  On May 31, 2013,

IACA sent iLink a letter demanding that it cease its use of the Marks.  Neither

party acceded.

On June 19, 2013, iLink filed in superior court a "Verified Complaint for

Infringement of Registered Service Marks, for Temporary and Permanent

Injunctive Relief, and for Other Remedies," against IACA alleging the

infringement of registered service marks pursuant to OCGA § 10-1-440 et seq.;

service mark infringement as a fraud for which equity will grant relief; violation of Georgia's Uniform Deceptive Trade Practices Act, OCGA § 10-1-370 et seq.; conversion; and tortious interference with contract and business relations. iLink asked for, inter alia, a temporary restraining order and permanent injunction enjoining IACA from infringing upon the registered marks and competing unfairly against iLink, judgment against IACA in an amount to be proved at trial, interest, attorney fees, litigation expenses, and punitive damages. On June 26, 2013, the superior court held a hearing on iLink's emergency motion for an interlocutory injunction, and following such hearing, on July 1, 2013, issued the now contested interlocutory injunction, enjoining IACA from "using, displaying, advertising or selling the service marks 'Miss India Georgia' and 'Miss Teen India Georgia,' with or without hyphens or in any other substantially similar or confusingly similar form," and specifically doing any such things in connection with IACA's July 2013 pageant or competition.[1]

In deciding whether to grant an interlocutory injunction, a trial court has broad discretion, keeping in mind the purpose of an interlocutory injunction

---

[1] As the superior court commented at the hearing in the matter and as its order reflects, the interlocutory injunction did not prohibit IACA from holding the pageants, but only that the pageants not proceed under the subject names.

3

which is to preserve the status quo pending a final adjudication of the merits of the case. OCGA § 9-5-8; *Holton v. Physician Oncology Svcs., LP*, 292 Ga. 864, 866 (2) (742 SE2d 702) (2013). In general, factors for the trial court's consideration are whether there is a substantial threat that the moving party will suffer irreparable injury if the injunction does not issue, whether the threatened injury to the movant outweighs the threatened harm possible to the party being enjoined, whether there is a substantial likelihood that the movant will prevail at trial, and whether the grant of the interlocutory injunction will not disserve the public interest. *Holton v. Physician Oncology Svcs., LP*, at 866 (2). This Court will not overturn a trial court's decision to grant an interlocutory injunction unless an error of law by the trial court contributed to the decision, or there was no evidence on an element essential to relief, or the trial court manifestly abused its broad discretion. Id. at 867 (2).

IACA contends that the superior court did indeed abuse its discretion in granting the interlocutory injunction because it treated the state trademark registrations as mandatory for establishing protectable trademark rights rather than as permissive, that IACA owned prior rights in the Marks by virtue of decades of use, and that because of its status as "senior user" of the Marks, in

order to issue the interlocutory injunction, the superior court must have wrongfully found that IACA either abandoned its rights in the Marks or assigned them to iLink. But, IACA's arguments are unavailing.[2]

Again, the purpose of an interlocutory injunction is to maintain the status quo until the lawsuit can be thoroughly adjudicated. It is a stop-gap measure to prevent irreparable injury or harm to those involved in the litigation. Thus, a determination of the status quo is essential. Certainly, it can be argued that inasmuch as iLink was the last entity, without controversy, to hold the named pageants prior to the interlocutory injunction hearing, regardless of any issues of registration of service marks by iLink or abandonment or assignment by IACA, the status quo was iLink being the host of the events using the Marks. But, this simplistic approach does not take into account the totality of the evidence before the superior court at the time of the interlocutory injunction hearing in regard to issues of abandonment or assignment of the Marks. At that time, the superior court had before it exhibits appended to iLink's unanswered

---

[2] IACA's contentions of error and arguments in support thereof focus on the propriety of the interlocutory injunction in regard to iLink's claim of infringement of service marks registered pursuant to state statutes; therefore, the issuance of injunctive relief based upon iLink's additional claims is not at issue in this appeal.

5

verified complaint,[3] which exhibits were expressly admitted into evidence by the superior court at the hearing. These exhibits included copies of the state registrations of the Marks and advertisements promoting iLink's presentation of the pageants under such Marks. The verified complaint also contained the express "affidavit" by iLink's president, Salman Molu, swearing to the accuracy and truthfulness of the factual representations maintained in the complaint, which included in pertinent part that iLink learned that IACA had discontinued its attempts to conduct pageants; that on or about November 2011, Molu contacted IACA to confirm that IACA had no intention of conducting a pageant in 2012; that Molu was informed by representatives of IACA, Rina Gupta and Lakshmi Vedala, that this was true; that IACA had no objection to iLink hosting the pageants under the names at issue because IACA had no plans to conduct any pageants, and therefore, IACA had abandoned any claim to the Marks; that IACA was one of the advertising sponsors of the 2012 pageants and that such advertisement was provided at no charge in consideration of IACA's abandonment of any claims it had to the Marks which had already "discontinued

---

[3]As noted, the hearing took place on June 26, 2013; IACA filed its "answer, affirmative defenses, and counterclaims" on July 19, 2013.

and abandoned"; and that because of the success of the pageants, IACA then decided to renege on its agreement with iLink and sought to "reclaim" its abandoned pageants and marks. Molu was present at the interlocutory injunction hearing to confirm what was alleged in the verified complaint.[4]

The morning of the hearing, IACA filed two affidavits in opposition to iLink's motion,[5] one from Kaushal Tripathi, the president of IACA, and the other from Rina Gupta, the vice-president of IACA, which alleged in relevant part that there were no representations to Molu regarding IACA's intent to organize, sponsor, or host the pageants beyond 2012, and that Gupta had no authority to make such decisions on IACA's behalf; that IACA remained committed to continuing the pageants once it was able to obtain the necessary funding and identify appropriate personnel "to take the pageant forward"; and that at no time did IACA decide to "abandon for all time" the pageants or its trademark rights in them.

---

[4]It is plain from the transcript of the hearing, that the superior court accepted Molu's presence and represented willingness to confirm the allegations of the complaint as such confirmation.

[5]IACA complains that the superior court did not consider, for temporal reasons or otherwise, the affidavits prior to its decision to issue the interlocutory injunction. However, the superior court's order is silent on the matter, and inasmuch as the affidavits were filed with the superior court prior to the hearing and the issuance of the interlocutory injunction five days later, they will be deemed to have been considered by the superior court for the purpose of the present appeal.

Thus, the evidence regarding abandonment or assignment of the Marks was in dispute. And, where evidence is conflicting on an issue relevant to the issuance of the interlocutory injunction, a trial court cannot be found to have abused its discretion in either granting or denying such injunction. *Jansen-Nichols v. Colonial Pipeline Co.*, 295 Ga. 786, 788 (764 SE2d 361) (2014).

Further, the judgment of the superior court must be affirmed for yet another reason. It was undisputed that the Marks were registered with the Office of the Secretary of State of Georgia as owned by iLink, pursuant to OCGA § 10-1-440 et seq. As such, the rights and remedies provided in the statutory scheme applied. The relevant inquiry then is what impact did such registration have, if any, with regard to the question of the "status quo" of use of the Marks.

Trade names are protected in this State by statute as well as by common law. *Giant Mart Corp. v. Giant Discount Foods, Inc.*, 247 Ga. 775 (279 SE2d 683) (1981). OCGA § 10-1-440 et seq. provides for the protection of trademarks, service marks, labels and advertising by virtue of registration with the Secretary of State of Georgia. *Giant Mart Corp. v. Giant Discount Foods, Inc.*, at 775-776. The provisions of OCGA § 10-1-440 et seq. regarding

8

registration are permissive, not mandatory, and registration itself does not

operate to deprive another of a previously acquired trade name. *Womble v.*

*Parker*, 208 Ga. 378, 380 (4) (67 SE2d 133) (1951).  Nor does registration

under the statutory scheme "adversely affect the rights or enforcement of rights

in trademarks or service marks acquired in good faith at any time at common

law."  OCGA § 10-1-452.  However, what registration of a service mark or

trademark does do is permit the owner of the registered mark to invoke the

remedy of a civil action for damages pursuant to OCGA § 10-1-450,[6] and more

significantly for the purpose of the present appeal, to invoke injunctive relief

---

[6] OCGA § 10-1-450 provides:
> Subject to Code Section 10-1-452, any person who shall:
> (1) Use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a trademark or service mark registered under this part in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or
> (2) Reproduce, counterfeit, copy, or colorably imitate any such trademark or service mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale or other distribution in this state of such goods or services;
> shall be liable to a civil action by the owner of such registered trademark or service mark for liquidated damages in the amount of $10,000.00, if such act has been committed with knowledge that the trademark or service mark has been registered under this part and such act has been committed without previously obtaining the consent of the owner thereof, and for any or all of the remedies provided in subsection (a) of Code Section 10-1-451, except that actual damages shall not be recoverable when liquidated damages are sought, and except that under paragraph (2) of this Code section the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such trademark or service mark is intended to be used to cause confusion or mistake or to deceive.

9

pursuant to the provisions of OCGA § 10-1-451.[7] The registration of a "logo"

or trade name as a service mark or trademark is a prerequisite to relief under

OCGA §§ 10-1-450; 10-1-451. *Diedrich v. Miller & Meier & Associates,*

*Architects & Planners,* 254 Ga. 734, 736 (2) (334 SE2d 308) (1985). But, once

such registration is accomplished, the plain language of OCGA §§ 10-1-450; 10-

1-451 compels the conclusion that for the limited purpose of invoking these

statutory remedies, the registrant is presumed to be the "owner" or "prior user"

of the mark. Indeed, a prior state registration gives rise to a rebuttable

---

[7] OCGA § 10-1-451 provides in relevant part:

(a) Any owner of a trademark or service mark registered under this part may proceed by action to enjoin the manufacture, use, display, or sale of any counterfeits or imitations thereof; and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display, or sale as may be by the court deemed just and reasonable and may require the defendants to pay to such owner all profits derived from such wrongful manufacture, use, display, or sale, and all damages suffered by reason of such wrongful manufacture, use, display, or sale, or both profits and damages. The enumeration of any right or remedy in this part shall not affect a registrant's right to prosecute under any penal law of this state.

(b) Every person, association, or union of working men adopting and using a trademark, trade name, label, or form of advertisement may proceed by action; and all courts having jurisdiction thereof shall grant injunctions to enjoin subsequent use by another of the same or any similar trademark, trade name, label, or form of advertisement if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the trademark, trade name, label, or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services, except that this Code section shall not deprive any party of any vested lawful rights acquired prior to March 4, 1955.

. . .

10

presumption of validity. *Kyle v. Ga. Lottery Corp.*, 304 Ga. App. 635, 637 (2) (698 SE2d 12) (2010), quoting *Harod v. Sage Products*, 188 FSupp.2d 1369, 1375 (S.D. Ga. 2002).

And, while IACA's offered affidavits may have rendered in dispute iLink's claims of abandonment or assignment of the Marks, the superior court was not required to find that they had "overcome" the statutory presumption of validity, for the purpose of the grant of interim injunctive relief. Indeed, the statutory scheme, specifically OCGA § 10-1-451, not only provides for the permissive grant of injunctions by a court of competent jurisdiction in subsection (a), but in subsection (b) contains the mandate that such a court "shall grant injunctions to enjoin subsequent use by another of the same [mark] . . . if there exists a likelihood of injury to business reputation . . . ."

Accordingly, there is no basis to overturn the superior court's grant of interlocutory injunctive relief to iLink.

Judgment affirmed. All the Justices concur.

MELTON, Justice, concurring.

11

I write separately to point out that, while the general purpose of an interlocutory injunction is to maintain the status quo, there are certain considerations which should be taken into account in reviewing the propriety of such an injunction. Among the factors to be considered by a trial court in granting a temporary injunction are whether:

> (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest.

(Citation omitted.) SRB Investment Svcs., LLLP v. Branch Banking and Trust Co., 289 Ga. 1, 5 (3) (709 SE2d 267) (2011). Although the trial court's order in this case does not expressly address these factors, the transcript clarifies that evidence relating to each factor was discussed and considered. First, with regard to iLink's injury, there was argument presented that iLink's 2013 pageant would suffer loss of contestants and revenue if it could not solely use the service marks in issue. Second, the trial court expressly weighed the respective harms to iLink and IACA at the hearing, and it determined that iLink's for-profit business would have more to lose than IACA's non-profit community organization.

Furthermore, the trial court indicated that it was just employing an equitable stop-gap measure, and, although it allowed iLink to temporarily use the service marks, the trial court refused to enjoin IACA from holding its pageant altogether. Third, based on the rebuttable presumption of iLink's ownership in the contested service marks due to state registration, Kyle v. Ga. Lottery Corp., 304 Ga. App. 635, 637 (2) (698 SE2d 12) (2010), along with iLink's sworn contention that IACA had expressed that it no longer had any intention of using the marks, it cannot be said that the trial court would have abused its discretion in any determination that iLink had a substantial likelihood of succeeding on the merits. Fourth and finally, by finding that both pageants could be held, the trial court's ultimate ruling limited any possible disservice to the public. Therefore, considering all of these factors, it cannot be concluded that the trial court abused its discretion in granting the interlocutory injunction.

Nonetheless, as the trial court noted, the interlocutory injunction is just a temporary remedy based on limited facts. A trial remains necessary to determine the ultimate ownership in the disputed marks.

Decided March 2, 2015.

Equity. DeKalb Superior Court. Before Judge Hunter.

2

Kilpatrick Townsend & Stockton, Allison S. Roach, William H. Brewster, Vaibhav P. Kadaba, Nichole D. Chollet, for appellant.

Higgins & Dubner, Michael W. Higgins, for appellee.